## PHENIX INS. CO. v. CHARLESTON BRIDGE CO.

### (Circuit Court of Appeals, Fourth Circuit. February 5, 1895.)

### No. 97.

**1. REMOVAL OF CAUSES—TIME TO ANSWER.**

An action was commenced in a state court, and the defendant's time to answer was extended, by order of that court, to a day certain. Before such day, the defendant removed the cause to the federal court, the condition of the removal bond requiring the transcript of the record to be filed on the first day of the next session of that court, which was after the date fixed for answering. On the opening of such session, the federal court ordered the defendant to answer forthwith, and set the case down for trial during that term. *Held*, that such procedure was proper, since the defendant's time to answer had not been extended for a certain number of days, part of which had not expired at the time of removal, but it had been required to answer before a fixed day, which had passed; it appearing also that defendant had suffered no hardship.

**2. INSURANCE—AGAINST DAMAGE BY WIND—PROXIMATE CAUSE OF LOSS.**

The C. Bridge Co. held a policy of insurance on its bridge, insuring it against loss or damage by windstorms, cyclones, or tornadoes, but expressly excluding loss or damage by high water, floods, or freshets. In an action on the policy, it was shown that the bridge was broken down by vessels which were blown against it by a violent wind, which also caused a backing up of the water and an unusually high tide, but no evidence was offered showing any damage by water which could be discriminated from the damage by wind. The court instructed the jury that if the dominating, originating cause of the injury, but for which it would not have happened, was high water, flood, or freshet, the policy did not cover the loss, but, if such cause was a cyclone, tornado, or windstorm, the policy did cover the loss. *Held*, that such instruction was correct, and the court was not bound to qualify it by any instructions relative to damage by water, in the absence of evidence as to water damage which could be distinguished from wind damage.

In Error to the Circuit Court of the United States for the District of South Carolina.

This was an action by the Charleston Bridge Company against the Phenix Insurance Company upon a policy of insurance. The action was brought in a court of the state of South Carolina, and

was removed by the defendant to the federal court. A motion by plaintiff to remand was denied (60 Fed. 929), and, upon the trial, judgment was given for the plaintiff. Defendant brings error.

This action at law was commenced in the court of common pleas for Charleston county, S. C., on January 27, 1894, by service of summons and complaint upon the defendant's agents. By the state law (Code S. C. p. 51, § 164) the defendant was required to answer within 20 days; that is to say, before the 16th of February. The defendant applied to have the time enlarged, and, as authorized by the Code (section 193), the judge of the court, on the 5th of February, extended the time within which the defendant was required to answer until the 10th day of March, 1894. On the 26th of February the defendant filed its petition for removal to the circuit court of the United States for the district of South Carolina, with the bond required by law. On the 17th of March the petition and bond were approved by the judge of the state court, and an order removing the case was entered. The condition of the bond required the defendant to file a copy of the record in the circuit court on the 1st day of its next session, which was the 2d day of April. The plaintiff, in order to enable itself to move to remand the case, filed a transcript of the record in the circuit court on the 23d of March. Its motion to remand was denied, and thereupon, on the 2d of April, the defendant filed a copy of the record. The circuit judge thereupon required the defendant to plead forthwith, and ordered that the case be put upon the trial calendar to be called for trial at the then pending term. On the 7th of April the defendant filed its answer, and the case was placed on the trial calendar. The defendant excepted to the order compelling it to plead forthwith, claiming that it was entitled to as many days in which to plead as were unexpired of the time allowed it by the judge of the state court at the date of filing its petition for removal. It also excepted to the order placing the case upon the trial calendar for that term, for the reason that, by section 276 of the Code of South Carolina, in all issues to be tried by the court or jury the plaintiff is required to file his complaint and summons in the clerk's office at least 14 days before the term. The circuit judge (Simonton), in refusing a motion to modify the order requiring the defendant to plead forthwith, and placing the case on the trial calendar, stated his reasons as follows: "This is a motion to modify the order of 5th inst., requiring the defendants to file their answers forthwith, and directing the case to be called for trial at this term. The defendants rely on the case of Pelzer Manuf'g Co. v. St. Paul Fire & Marine Ins. Co. (decided in this court) 40 Fed. 186. The rule is this: When, under the Code of Civil Procedure, a defendant is served with a summons requiring him to answer or demur within twenty days from the service thereof, and pending the twenty days a petition and bond in a removal case are filed in the state court, when the record comes here it is examined, and in computing the twenty days none of the days are counted during the suspension of the jurisdiction of the state court and the resumption of procedure in this court. From the entry of the record here, it comes within our rules of procedure. And so, also, if, within the twenty days, a state judge enlarges the time by giving so many days more within which to file the answer, the same rule applies; only those days are counted in which the defendant could file his answer with the record. But in the case at bar the defendants did not have so many days within which to put in their answers. They were required by the order of the state court to put in their answers on or before a day fixed and certain,—10th March. When the records come here, they come with that order in full force. No days can be omitted from the computation, because the day is fixed,—10th March. No allowance is made for suspension. We examine the record, and see that the 10th of March had elapsed, and that no answer had been put in. It is said that defendants can construe the order as if it allowed so many days counting the days between the date of the order and the 10th March. But, for reasons of his own, the state judge did not say so. He fixed a day, allowing no chance of intermission or suspension, and required the answer on that day. Under the rule stated above, we come within the exigency of the order enlarging the time, for only certain days are counted. It is not within our power now, the day having elapsed, to

change his language or make a different order. If we fix a different day than the 10th March, we change the order of the state judge in a material point. If inevitable circumstances had arisen preventing the fulfillment of this order, we could consider them. But defendants had it within their power at any time between the filing of the petition, and the 10th of March, to enter a transcript of the record here, and get the active interference of this court. The whole scheme and purpose of the removal acts are to prevent the use of them for delay. Scarcely a case, if any, can be found in which the filing of the record in the circuit court and the filing of the defense were not contemporaneous. The record must be filed on or before the first term of the circuit court of the United States next succeeding the filing of the petition and bond. The construction contended for could be used to work delay, and forbids the court to be liberal in its judgment."

On the 7th of May a jury was sworn, and the trial began. The case was an action on a $15,000 five-year policy of insurance against loss or damage by windstorms, cyclones, or tornadoes, issued by the plaintiff in error to the Charleston Bridge Company, the defendant in error, "on their frame and iron bridge, including wooden approaches, iron spans, and draw over the Ashley river, at the foot of Spring street, Charleston, S. C." The policy contained the following written clause: "This company is not liable for any loss or damage that may occur by reason of high water, floods, or freshets, said insurance being only against cyclones, windstorms, and tornadoes." The bridge insured was a structure built in 1886, extending across the Ashley river, near its mouth, from Charleston to the opposite shore, a distance of 2,376 feet. The testimony for the plaintiff below proved that, commencing at 3 o'clock p. m., on Sunday, August 27, 1893, and continuing until Monday morning, there prevailed at Charleston a cyclonic storm of unprecedented violence, the wind attaining about midnight of Sunday a velocity of 120 miles an hour. By the violence of the wind buildings were blown down, roofs carried away, telegraph poles snapped off, hundreds of trees uprooted, and vessels blown from their moorings. The wind also caused a banking up of the water on the shore, so that the tide rose 4½ feet above its normal height. During Sunday night, while the wind was at its greatest velocity, two schooners, each about 500 tons, one of them loaded with phosphate rock, and having a loaded barge and elevator made fast to it, were broken from their moorings by the wind, and driven up the river against the bridge, and passed through it by an opening which the loaded schooner and barge had made by knocking down a span of it. Several heavy lighters also went adrift, and were driven by the wind against the bridge. One was found among the wreckage of it, and one had gone through. The bridge was damaged to an extent which expert bridge builders testified would require over $35,000 to restore it.

The court, in its charge, instructed the jury as follows: "The question is one of fact for the jury. Was the injury to the bridge caused by freshet, flood, or high water, or was it caused by cyclone, windstorm, or tornado? That is to say, what was the real cause of the injury, the dominant, originating cause of the injury, that cause but for which the injury would not have happened? If this cause, the operating, originating, efficient cause, was high water, flood, or freshet, the policy does not cover the loss, and the plaintiff cannot recover; but if this operating, originating, dominant, and efficient cause was a cyclone, tornado, or windstorm, then the policy does cover this loss, and you must find for the plaintiff." To this instruction the defendant excepted, assigning as error that the jury should not be limited to a consideration of what was the originating and efficient cause of the injury, because, as it contended, even if the originating and efficient cause of the loss was a cyclone, tornado, or windstorm, yet if the loss was occasioned through the agency of high water or flood, in the grasp or under the influence of the tornado, cyclone, or windstorm, the defendant was exempted under the policy from such loss. The defendant, on its own behalf, requested the court to instruct the jury as follows, which the court refused to do: "That if the jury believed that a tornado, windstorm, or cyclone was prevailing in and about the property specified in the policy at the time stated in the complaint, but the loss or damage, as may be shown to have been sustained, was caused by the force of high water or a flood in the grasp or under the influence of

the wind, then the plaintiff cannot recover, for such loss is expressly excepted under the terms of the policy." And the defendant also prayed the court to instruct the jury as follows: "If the jury believe that a tornado, windstorm, or cyclone was prevailing in and about the property specified in the policy at the time stated in the complaint, but the loss, as may be shown to have been sustained, was caused partly by the force of the wind itself and partly by the force of high water or a flood in the grasp or under the influence of the wind, then the plaintiff can only recover for such immediate wind damage, and the jury must exclude all water damage in determining upon the amount of their verdict." And also requested the following instruction: "That if the jury believe that, at the time stated in the complaint, a windstorm, cyclone, or tornado was prevailing in the vicinity and about the property specified in the policy, and that such loss or damage as may be shown to have been sustained was caused by the effect of a flood or high water, and such flood or high water was directly and immediately caused and rendered destructive by said cyclone, tornado, or windstorm, then and in such case plaintiffs cannot recover, because, under the express conditions of the contract, such loss or damage was excluded in the provision: 'This company is not liable for any loss or damage that may occur by reason of high water. floods, or freshets.'" The court refused to give any one of the three instructions asked by the defendant, upon the ground that no evidence had been offered to sustain the theory that any of the damage to the bridge had been caused by high water or flood. The case being submitted to the jury, they found for the plaintiff for the full amount of the policy.

George M. Trenholm, for plaintiff in error.

Julian Mitchell, for defendant in error.

Before GOFF, Circuit Judge, and HUGHES and MORRIS, District Judges.

MORRIS, District Judge (after stating the facts as above). The reasons stated by the circuit judge for requiring the defendant to plead forthwith, and for directing the case to be placed on the trial calendar of the then pending term of the court, appear to us satisfactory. The time allowed the defendant in the state court to plead was not the 20 days after service, as prescribed by the state statute, but the enlarged time fixed by the judge of that court, viz. the 10th of March,—a day certain. That day had passed when the defendant filed the transcript of record in the circuit court on the 2d of April, and the defendant was in default. There was no rule of practice either in the circuit court, or prescribed by statute for the state practice, applicable to such a case, regulating the time for pleading where default had occurred between the time when the petition for removal was filed in the state court and the record was actually filed in the circuit court. It was a case not provided for by rules, and of necessity a discretion remained in the judge to decide what reasonable terms should be imposed on the defendant. The defendant had had from the 27th of January to the 2d of April to prepare its answer. It alleged no facts, so far as the record discloses, to show why it could not answer forthwith, and, as the record shows, it filed an answer which an officer of the company had sworn to on the 1st of March. The case was not actually called for trial until a month after the answer was filed. It is manifest that there was nothing unreasonable or oppressive in requiring the defendant to plead without longer delay, and in requiring the case to be tried at that term.

The state practice invoked was not applicable to a case in which there had been a default in answering, or in which there had been a removal from one jurisdiction to another, and in which the regular conduct of the case had been by removal taken out of the control of the plaintiff. Under the special circumstances of this removal, the default was an excusable one, but the judge, in prescribing the terms upon which the defendant might plead, was called upon to see to it that, while the defendant was not deprived of its defense, the plaintiff should not have to submit to a continuance which in all probability would have postponed the trial for a year. The circuit courts are required by section 914 of the Revised Statutes to conform as near as may be to the practice of the state courts, but obviously conditions may arise from the peculiar situation of removed cases which may prevent the state practice from being strictly applied. The words "as near as may be," in the act of congress, impose a discretion (Railroad Co. v. Horst, 93 U. S. 301), and devolve a duty upon the judge not to allow justice to be delayed by the application of state court rules to cases for which they were not intended and to which they ought not to be applied. We find nothing in these rulings of which the defendant can justly complain.

Coming now to the merits of the case, the question is whether the court rightly instructed the jury that they were to seek for the operating, originating, dominant, and efficient cause of the damage to the bridge, and, if they found it was the cyclone, then the policy covered the loss, but, if they found it to be the high water, flood, or freshet, then it did not; and whether the court was right in refusing the three prayers submitted by the defendant. The rule of law is well settled that, where a particular peril is insured against, in order to be entitled to indemnity the assured must show that the particular peril caused the loss. It is held that the peril which causes the loss is the one which is the predominating and efficient cause, the cause which produces the disaster without any new intervening cause, which of itself would have been sufficient to produce the result. This rule has been carefully stated and elucidated in Insurance Co. v. Tweed, 7 Wall. 44; Insurance Co. v. Boon, 95 U. S. 131; Railway Co. v. Kellogg, 94 U. S. 469–473. In these and other cases in the supreme court, it has been so fully explained that the rule needs no further discussion. In the instruction given to the jury they were told that from the testimony they must ascertain what was the real cause of the injury,—the cause but for which the injury would not have happened; that, if the operating, originating, efficient cause was high water, flood, or freshet, the policy did not cover the loss, and the plaintiff could not recover; but, if the operating, originating, dominant, and efficient cause was a cyclone, tornado, or windstorm, then the policy did cover the loss, and they must find for the plaintiff. This instruction fully stated the law and the issue of fact to be decided by the jury, and there can be no objection to it unless it arises out of the restriction written in the policy exempting the company from liability for any loss occurring by reason of high water, floods, or freshets; and the precise question is whether there was evidence which required this instruction

to be qualified by any of those asked for by the insurance company. The testimony showed that the bridge was broken by the heavy schooners and barges driven against it by the cyclone. This was the testimony of men who were on the vessels when they went through the bridge, driven up the river by the wind, and who saw the different spans of the structure when they fell. The only direct testimony which qualified this in any way was that of one of these witnesses who says that one span of the bridge was down before the schooner he was on reached it. He testifies, however, that that span was blown down by the wind; that the water was not very rough; and that the water did but little damage.

The inference is sought to be drawn on behalf of the insurance company that, as the water was so abnormally high, it must have damaged the bridge, and particularly the ends, which were not so high as the middle. But the principal damage was not at the ends, and in the middle the floor of the bridge was, as testified by the only persons who saw it, from five to six feet above the highest water during the cyclone. So far as the evidence discloses, it would have been mere speculation for the jury to have found that any part of the damage was caused by the high water, and there was no testimony whatever from which they could have found what proportion of the loss, if any, was attributable to that cause.

In Phillips on Insurance these rules are stated:

Section 1136:

"In the case of the concurrence of two causes of loss, one at the risk of the assured and the other insured against, or one insured against by A. and the other by B., if the damage by the perils respectively can be discriminated, each party must bear his proportion."

Section 1137:

"If, where the assured and the underwriters or different underwriters are each responsible for different causes of loss which concur in the loss, and the damage from each cause cannot be distinguished, the party responsible for the predominating, efficient cause, or that by which the operation of the other is directly occasioned as being merely incidental to it, is liable to bear the loss."

These rules are expressly approved in Howard Fire Ins. Co. v. Norwich, etc., Co., 12 Wall. 194–196, and they are applicable to the defense in the present case, and justified the rejection of the defendant's prayers. These prayers all ask the court to submit to the jury to find that there was damage caused by the high water, or by the water in the grasp of the wind or under the influence of and made destructive by the wind, and, if they should so find, then, as to so much of the damage as was thus caused by the water, the plaintiff could not recover. Without deciding whether this was a correct statement of the law, we think these prayers were objectionable, because there was no evidence by which the jury could discriminate the amount of the water damage. The cause of loss which the insurance company was to be responsible for was the cyclone; the cause of loss which the bridge company was itself to bear was high water. The testimony on behalf of the plaintiff strongly tended to prove that the cyclone was the sole cause of the loss, and that no

damage resulted from the high water. The jury found that the cyclone was the predominating, efficient cause. The defendant produced no testimony by which, if there was any water damage, it could be discriminated and separated from the wind damage. The case, therefore, came within the rule that, when the damage from each cause cannot be distinguished, then the party responsible for the damage caused by the predominating, efficient cause is liable for the whole loss.

Finding no error in the rulings of the court, the judgment is affirmed.