## SABATIER BROS. v. SCOTTISH UNION & NATIONAL INS. CO.
### No. 1272.

Court of Appeal of Louisiana. First Circuit.
Jan. 22, 1934.

Pujo, Bell & Hardin and McCoy, Moss & King, all of Lake Charles, for appellant.

St. Clair Adams Jr., of New Orleans, for appellee.

MOUTON, Judge.

A warehouse belonging to plaintiff was insured by defendant company against direct loss by windstorm, cyclone, and tornado.

The warehouse collapsed in January, 1932, and this suit is brought against defendant company for the recovery of $2,000 on the insurance policy.

The demand was rejected, and plaintiff appeals.

There is no claim made that the warehouse was blown down by a cyclone or tornado during the night of January 23, 1932, the contention being that it was destroyed by a windstorm.

This presents the sole issue.

The warehouse was situated in Elton, parish of Jefferson Davis.

Several witnesses, residents of Elton, and others who happened to be there on the night of the occurrence, testified in the case.

These witnesses say that the morning after the warehouse fell all the buildings in Elton were standing, no roofs, tin or shingles, had been affected by the wind, no windows or doors were broken, and that they saw no damage or injury to any house or building, nor was a fence blown down. There was, according to some witnesses, rattling of windows and doors, the upsetting or turning over of tubs and pans in the yards, and such like disturbances.

Mr. Sommer, one of plaintiff's witnesses, noticed the wind had broken a limb in his front yard, he reached out he says and pulled it down, stayed there for a minute or so, and went back in his house. His wife testifies that he asked her to go on the porch, but that she refused. Going through such performances does not indicate that a dangerous wind was blowing at the time.

Mr. Garbasino, another witness for plaintiff, testifies that the wind blew down a mulberry tree in size about eight inches around, but says this tree was half dead and was blown up by the roots.

The proof is there was a heavy rain accompanying the wind on that night, and it occurs to us that a tree in the condition above described would be susceptible of toppling over under a wind not characterized by unusual violence. This seems indicated by the fact that not a fence was blown down in Elton on that night, nor was a single roof of tin or shingles damaged in the least.

A windstorm is defined by Webster to be:

"A storm characterized by high wind with little or no precipitation."

The proof herein shows that there was an extremely heavy rain that night; hence, according to the above-quoted definition from Webster, there was no windstorm blowing at that time.

In the case of Jordan v. Iowa Mutual Tornado Insurance Company, 151 Iowa, 73, 130 N. W. 177, 178, Ann. Cas. 1913A, 266, the court, in referring to a windstorm, says: "As used in the policies in suit it should be construed as something more than an ordinary gust of wind, no matter how prolonged, and it takes its meaning measurably at least from the other words with which it is associated, to wit, tornado and cyclone. However, it need not have either the cyclonic or the twirling or whirling features which usually accompany tornadoes or cyclones, but it must be more than an ordinary current of air no matter how long continued. In other words it must assume the aspect of a storm, i. e., an outburst of tumultuous force."

This is about the definition of a windstorm given in the several decisions cited on the subject by counsel in this case.

The windstorm, says the court in that decision, derives its meaning, measurably at least, from its association with the other words, "tornado" and "cyclone." The only difference between these triplets seems to be that in the windstorm the whirling or rotating movement which accompanies tornadoes and cyclones is absent. In other words, as says the court, there must be more than an "ordinary current of air," that is, "an outburst of tumultuous force."

In the case of Mulgrew Co. v. National Union Fire Insurance Company, 187 Iowa, 1292, 175 N. W. 50, 51, the court said: "An ordinary gust of wind, no matter how prolonged, is not a windstorm."

This is the character given to the windstorm in other decisions on this question.

Three of the witnesses testifying for plaintiff stated that there were gusts of wind on that night, but not one said that they had continued for any alarming length of time. No matter, however, how prolonged, they could not have been classified as a windstorm under the case above cited.

There is no proof showing at what velocity the wind was blowing or approximating its intensity. The lack of damage in Elton resulting from the wind, to which we have referred, indicates that it was merely blowing by gusts and did not rise into "outbursts of tumultuous violence," and hence was not a windstorm, as defined in the decisions governing in cases of this nature.

In the case of Phenix Insurance Company v. Charleston Bridge Company (C. C. A.) 65 F. 628, page 632, the court used the following language: "The rule of law is well settled that, where a particular peril is insured against, in order to be entitled to indemnity the assured must show that the particular peril caused the loss."

Mr. V. E. Smith, a civil engineer, after the warehouse had collapsed, made three inspections of the building and found that the lumber used for the foundation of the structure was in an advanced state of decomposition. The pieces or samples of the lumber taken therefrom which were submitted to this court's observation confirm the statement made by Mr. Smith.

The evidence shows that there were sixteen or seventeen thousand sacks of rice in that building when it collapsed. Mr. Smith, a civil engineer, found, according to his calculations, that there was approximately four thousand five hundred pounds pressure in the building per square foot. The kind of soil on which the warehouse was erected, if dry, could, in his opinion, safely sustain the weight of one ton to the square foot, but, in every observation he made, he found that the soil was very wet and unstable. According to the testimony of Mr. Smith, this building had about reached its point of failure, that almost any external force could cause it to fall, and that it could have collapsed under the pressure of a ten mile wind.

Obviously, the conditions of the policy cannot be construed as securing protection against a wind of that character. As before remarked, there is no proof showing at what velocity the wind was blowing when the warehouse collapsed, but there is nothing to uphold the contention that there was then a windstorm, the peril insured against under the provisions of the policy, and the demand was therefore properly denied.

Judgment affirmed.