# ALBERT LEA ICE & FUEL COMPANY v. UNITED STATES FIRE INSURANCE COMPANY AND OTHERS.[1]

April 24, 1953.

No. 35,963.

[1]Reported in 58 N. W. (2d) 614.

*Nichols & Tuveson* and *Clausen, Hirsh & Miller,* for appellants.
*Elmer R. Peterson,* for respondent.

CHRISTIANSON, JUSTICE.

Action is brought by plaintiff, Albert Lea Ice and Fuel Company, against defendant insurers to recover for damages to plaintiff's icehouse allegedly caused by windstorm. The policies in question insured the icehouse against fire loss and in addition "direct loss by windstorm." The jury returned a verdict for plaintiff. Defendants appeal from an order denying their alternative motion for judgment notwithstanding the verdict or for a new trial.

The icehouse in question is of wood construction and is located on the north side of Fountain Lake in Albert Lea, Minnesota. The damage was confined to an addition to the icehouse which was built about 1935. It is 120 feet long (north and south), 36 feet wide, and 20 feet high. The east wall is the west wall of the original icehouse which was built in 1926. The entrance is located at the south end facing the lake and is 4 feet wide and 20 feet high. The addition is divided into two equal rooms by a partition running east and west which also has an entrance 4 feet wide and 20 feet high. The roof structure is supported by trusses running east and west which are 12 feet apart. The east ends of these trusses rest on a plate placed on top of the west wall of the original icehouse.

The damage was discovered by one of plaintiff's employees on August 28, 1951. The west wall bulged outward approximately two feet at the north end. Several of the northerly trusses had fallen down on the east side causing a partial collapse of the roof. Commencing August 1, 1951, the addition had been rented out for the storage of stoves, and the south entrance and partition entrance were left fully opened for the purpose of airing out the building.

Plaintiff called Thomas Duffy, a building contractor who built the addition in about 1935 and examined its damaged condition shortly after August 28, 1951, to testify as an expert witness in its

behalf. Mr. Duffy testified that in his opinion the cause of collapse was that wind had entered through the open entrance way and created undue pressure on the west wall of the addition forcing it outward and thereby pulling the trusses away from the supporting plate on the east side. Edward Olson, the only other witness called by plaintiff, testified that he was not certain just when the damage occurred but that it happened sometime during the month of August. Plaintiff then introduced recordings of wind velocity at the Mid-West Airlines airport for the month of August. The recordings were taken each day during the hours of 8 a. m. to 3 or 4 p. m. The airport is located about two miles from the icehouse. The highest recorded wind velocity during that period was on August 5, 1951, when there was a southeast wind of 25 miles per hour with gusts up to 37 miles per hour. None of the witnesses could recall any strong winds during the period in question nor could they recall any broken limbs or branches of trees in the area of the icehouse or the city of Albert Lea.

1. Appellants contend that the evidence is insufficient to support the verdict against them. They cite a definition of "windstorm" obtained from an early Iowa case, Jordan v. Iowa Mut. Tornado Ins. Co. 151 Iowa 73, 77, 130 N. W. 177, 178, wherein the Iowa court said:

"The word 'windstorm' is a simple one and is defined by Webster to be: 'A storm characterized by high wind with little or no precipitation.' As used in the policies in suit it should be construed as something more than an ordinary gust of wind, no matter how prolonged; and it takes its meaning measurably at least from the other words with which it is associated, to wit, tornado and cyclone. However, it need not have either the cyclonic or the twirling or whirling features which usually accompany tornadoes or cyclones, but it must be more than an ordinary current of air no matter how long continued. In other words, it must assume the aspect of a storm, i. e., an outburst of tumultuous force."

However, this frequently quoted definition of "windstorm" does not provide the rigid standards which appellants suggest and when applied to particular fact situations has not led to uniform results.[2]

In our opinion the sounder and more reasonable view is that expressed in Gerhard v. Travelers F. Ins. Co. 246 Wis. 625, 627, 18 N. W. (2d) 336, 337, where the Wisconsin court stated:

"* * * In the absence of definition or limitation in the policy, we think that a windstorm must be taken to be a wind of sufficient violence to be capable of damaging the insured property either by its own unaided action or by projecting some object against it. This is especially true where, as here, the more violent forms of windstorm [cyclone and tornado] are specifically named as something different from a mere windstorm. Any other view would work an imposition upon the insured. If defendant wishes to adopt some scale which establishes the velocity of wind necessary for a windstorm, or if it desires to limit its liability beyond the point that we have indicated, it should incorporate its proposed standard in the policy by clear terms and such ambiguities as are left in this policy should be resolved against it."

In Fidelity-Phenix F. Ins. Co. v. Board of Education, 201 Okl. 250, 252, 204 P. (2d) 982, 985, the Oklahoma court, after quoting from the Gerhard case, said:

"Considering the purpose of the coverage and the field of the risk, it would seem that any wind that is of such extraordinary force and violence as to thereby injuriously disturb the ordinary condition of the things insured is tumultuous in character, and is to be deemed a windstorm within the purview of the policy, in absence of a provision therein to the contrary."

These cases were followed in Adams Apple Products Corp. v. National Union F. Ins. Co. 170 Pa. Super. 269, 275, 85 A. (2d) 702, 705, where the court said:

---

[2]Compare Metropolitan Ice Cream Co. v. Union Mut. F. Ins. Co. (Mo. App.) 210 S. W. (2d) 700, reversed on other grounds, 358 Mo. 727, 216 S. W. (2d) 464, with Sabatier Bros. v. Scottish Union & Nat. Ins. Co. (La. App.) 152 So. 85.

"It seems to us that *any wind,* strong and sustained enough to damage the insured property, is a 'windstorm' within the meaning of the term as used in the policies and within the contemplation of the parties."

Therefore, the principal question before us in the instant case is whether the evidence is sufficient to support the jury's finding that the icehouse was damaged by wind.

Appellants assign as error the admission of Duffy's opinion testimony as to the cause of the collapse. They contend (1) that this was not a proper subject for expert testimony and that the jury without the aid of expert opinion was competent to determine the cause of the collapse; (2) that Duffy was not an expert; and (3) that he was permitted to give an opinion on the ultimate issue to be determined by the jury.

Appellants' first contention is without merit. The description and photographs of the damaged property standing alone do not permit an inference as to the cause of the collapse. Clearly this was an appropriate subject for expert testimony, the function of which is to assist the jury in reaching a correct conclusion from the facts in evidence. See, Swanson v. LaFontaine, 238 Minn. 460, 57 N. W. (2d) 262; Woyak v. Konieske, 237 Minn. 213, 54 N. W. (2d) 649. Appellants themselves called an experienced building contractor to testify as an expert witness in their behalf. His examination of the building disclosed that the plate on top of the west wall of the old icehouse was dry-rotted to such an extent that it had no more carrying strength. He stated that in his opinion the roof caved in because the plate upon which the trusses rested had no more carrying strength and just collapsed.

As to appellants' second contention, it is well established that whether a witness qualifies as an expert ordinarily is a question to be decided by the trial court, and its ruling thereon will not be reversed on appeal unless it is based on some erroneous view of the law or is clearly not justified by the evidence. Woyak v. Konieske, *supra;* Koenigs v. Thome, 226 Minn. 14, 31 N. W. (2d) 534; 7 Dun-

nell, Dig. (3 ed.) § 3335. The record discloses that Duffy is an experienced building contractor and was familiar with this particular building. Aside from the sufficiency of the factual foundation for his opinion hereinafter discussed, the finding that Duffy was an expert is sustained by the evidence. See, Bast v. Leonard, 15 Minn. 235 at p. 239 (304 at p. 308); Peteler Portable Ry. Mfg. Co. v. Northwestern Adamant Mfg. Co. 60 Minn. 127, 129, 61 N. W. 1024, 1025.

Moreover, it has long been the rule in this state that the fact that the opinion of an expert bears directly upon the issue to be determined by the jury does not render it inadmissible. Woyak v. Konieske, *supra;* 7 Dunnell, Dig. (3 ed.) § 3326, and cases cited.

■ Although the sufficiency of the factual foundation for Duffy's opinion was not raised in appellants' motion for a new trial, we still must consider this question in view of the fact there is no other evidence in the record to support the jury's finding that the icehouse was damaged by wind. An opinion of an expert must be based on facts sufficient to form an adequate foundation for an opinion. 20 Am. Jur., Evidence, § 795; 32 C. J. S., Evidence, § 522. An opinion based on speculation and conjecture has no evidentiary value. As this court stated in Susnik v. Oliver I. Min. Co. 205 Minn. 325, 331, 286 N. W. 249, 252:

"* * * an affirmative finding cannot be sustained upon mere conjecture, as distinguished from real deduction. This rule applies to opinion evidence, even that of the best of experts. Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852. It governs in weighing all evidence and its analysis for purposes of decision."

The collapse of the icehouse could have been caused by (1) the breaking of the trusses, (2) undue pressure on the west wall forcing it outward and thereby pulling the trusses away from the supporting plate on the east side, or (3) the failure of the plate on the east side to support the trusses. On cross-examination, it was brought out that Duffy excluded the first possibility and immediately determined that the second possibility was responsible for the col-

lapse.[3] Duffy's failure to take into consideration the condition of the plate is unexplained in the record. Appellants contend that the plate was dry-rotted to such an extent that it failed to support the trusses, and they produced rather strong and convincing testimony to that effect. In our opinion, Duffy's failure to consider the deteriorated condition of the plate leads to but one conclusion—that his opinion was not based upon an adequate factual foundation and was therefore speculative and conjectural. The statements of this court in Hiber v. City of St. Paul, 219 Minn. 87, 91, 16 N. W. (2d) 878, 880, with respect to the opinion testimony of a medical expert are equally applicable here. The court there stated:

"* * * The rule against conjectural and speculative opinions is aimed at those not based upon a factual foundation and not at those which are. The distinction is between inference and conjecture. As Lord Shaw said in Kerr or Lendrum (Pauper) v. Ayr. Steam Shipping Co. Ltd. [1915] A. C. 217, 233: 'The distinction [between an inference and a conjecture] is as broad as philosophy itself. It is that an inference rests upon premises of fact and a conjecture does not.' This distinction is fundamental in determining whether the opinion of an expert has evidentiary value. An opinion of a medical expert witness based upon an adequate fac-

---

[3]On cross-examination Duffy testified as follows:

"A. But the thing that I was interested in was to see what condition the trusses were in. They were perfectly sound and solid.

"Q. In other words, you put in those trusses in 1941 or thereabouts?

"A. 1941, that was the date.

"Q. And you were interested to see if they were holding up?

"A. I was interested to see if they were holding up, and they were not rotted, they were perfectly sound.

"Q. You didn't go up on the roof to see what the plate looked like?

"A. No, I didn't, because—

"Q. That is all."

On redirect examination:

"Q. Because what?

"A. Because I didn't go over there exactly for that. I went over there to see if I could give my opinion on what caused the trouble."

tual foundation is not a conjecture, but a legitimate inference, and as such has evidentiary value in determining disputed questions of fact. Golden v. Lerch Bros. Inc. 203 Minn. 211, 281 N. W. 249. Where such an opinion is not based upon an adequate factual foundation, it has no evidentiary value and should be rejected. Honer v. Nicholson, 198 Minn. 55, 268 N. W. 852; O'Connor v. Pillsbury Flour Mills Co. 197 Minn. 534, 267 N. W. 507."

Since plaintiff's entire cause hinges upon such opinion testimony, we must conclude that the evidence as it now stands is insufficient to support the jury's verdict and that in the interests of justice a new trial should be granted.

Reversed and new trial granted.

UPON APPEAL FROM CLERK'S TAXATION OF COSTS.

On May 22, 1953, the following opinion was filed:

PER CURIAM.

Respondent appeals from the clerk's taxation of costs and disbursements awarded to appellants.

Respondent contends that the disbursement item of $192 for printing the reply brief should be disallowed in part on the theory that it contained unnecessary, irrelevant, and immaterial matter. See, Supreme Court Rule VIII(5), 222 Minn. xxxii, xxxiv. We find that this contention is correct. The reply brief is to be limited to a concise answer to new points made by respondent. See, Supreme Court Rule VIII(1), 222 Minn. xxxii. Appellants' reply brief consists largely of repetition of arguments previously made and of new matter not in response to points made by respondent. By reason of these unnecessary inclusions, a deduction of $119 in the amount of the disbursements is ordered. This deduction shall be made by allowing appellants the sum of only $73 for the printing of the reply brief.

With the exception of the $119 deduction, the clerk's taxation of costs and disbursements is affirmed.

MR. JUSTICE ROGER L. DELL took no part in the consideration or decision of this case.