*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-1178**

In the Matter of the Civil Commitment of:
Jesse L. Lee f/k/a Dennis L. Wiesinger

**Filed January 17, 2017
Affirmed
Halbrooks, Judge**

Ramsey County District Court
File No. 62-P2-93-000304

Lori Swanson, Attorney General, Aaron Winter, Assistant Attorney General, St. Paul, Minnesota (for appellant Commissioner of Minnesota Department of Human Services)

Mary M. Huot, St. Paul, Minnesota (for respondent Jesse L. Lee)

Considered and decided by Halbrooks, Presiding Judge; Rodenberg, Judge; and Kirk, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant Commissioner of the Minnesota Department of Human Services challenges the judicial appeal panel's order granting respondent Jesse L. Lee's petition for provisional discharge from the Minnesota Sex Offender Program (MSOP), arguing that the judicial appeal panel clearly erred by relying on expert witnesses who relied on inaccurate or untimely facts. We affirm.

**FACTS**

In 1976, Lee was civilly committed as a psychopathic personality following convictions of aggravated kidnapping and sodomy. He was transferred to the MSOP Supervised Integration Unit in 2007. Lee petitioned to transfer to the MSOP Community Preparation Services Unit (CPS) in 2010, and he was transferred to the CPS in 2011. By May 2013, he achieved phase 3 of treatment and stage 3 of programming, the final respective stages in CPS.

Lee has participated in off-campus community outings since 2008. He volunteers in the community weekly and is a mentor in a mentoring program. Lee is currently taking classes to earn his GED. Neuropsychological assessments identify Lee's level of intellectual functioning in the borderline range. While he has participated in several polygraph examinations, Lee "may not be an appropriate candidate for future polygraph examinations due to the results of the neuropsychological assessment." Lee has had an issue with chemical dependency in the past, which he acknowledges is a factor in his offending, and he completed chemical-dependency treatment while civilly committed and attends AA meetings.

In October 2013, Lee petitioned the special review board (SRB), requesting that he be provisionally discharged from civil commitment. An individual treatment plan was developed in November 2013 to address and mitigate some of Lee's dynamic risk factors. The SRB held a hearing in May 2014 and recommended granting Lee's petition. The

2

commissioner petitioned for rehearing and reconsideration.[1]  The judicial appeal panel held the first-phase hearing in July 2015 and heard testimony from Haley Fox, Ph.D. Dr. Fox is a former clinical director of MSOP-St. Peter.  The commissioner moved to dismiss Lee's petition for provisional discharge at the conclusion of the first-phase hearing.  The judicial appeal panel denied the motion and scheduled a second-phase hearing.

At the second-phase hearing, the judicial appeal panel heard testimony from Chris Schiffer, the clinical director of MSOP-St. Peter; Lauren Herbert, Psy.D.; and Mary Kenning, Ph.D.  Schiffer testified about Lee's treatment need and addressed Lee's recent absences from treatment and his compliance with his treatment action plan.  Schiffer also stated that Lee has been routinely directed by females in positions of authority without issue.  Schiffer supports Lee's provisional discharge and opined that his continuing treatment needs could be satisfied in the community.

Dr. Herbert is the forensic-evaluation department director at MSOP.  Her opinion is based on discussions with Lee's treatment team, actuarial risk-assessment tools, and

---

[1] When the commissioner files a petition for a rehearing and reconsideration of the SRB's recommendation, the committed person seeking provisional discharge "bears the burden of going forward with the evidence, which means presenting a prima facie case with competent evidence to show that the person is entitled to the requested relief."  Minn. Stat. § 253B.19, subd. 2(c) (2016).  The proceeding in which a committed person produces evidence is commonly referred to as a "first-phase hearing." *Coker v. Jesson*, 831 N.W.2d 483, 486 (Minn. 2013).  If the committed person satisfies his burden, the opposing party bears the burden of proving by clear and convincing evidence that the committed person should not be provisionally discharged.  Minn. Stat. § 253B.19, subd. 2(c).  The proceeding in which the opposing party attempts to prove that the discharge petition should be denied is commonly referred to as a "second-phase hearing." *Coker*, 831 N.W.2d at 486.  The judicial appeal panel then rules on the petition.  Minn. Stat. § 253B.19, subd. 3 (2016).

3

observations from several interviews. Dr. Herbert initially opined that Lee does not meet the statutory criteria for provisional discharge. But she later recommended that Lee be provisionally discharged based on his "progress toward managing his remaining dynamic risk factors."

Dr. Kenning is the court-appointed examiner assigned to this case. She opined that Lee needs further treatment and supervision in his current setting. Her opinion is based on a thorough review of the various treatment records and reports, as well as an interview with Lee. While Dr. Kenning agrees with Dr. Herbert's risk assessment, she disagrees with her conclusion. Dr. Kenning testified that Lee "was on a mildly deteriorating course" in his treatment. She also testified that there are no well-documented treatment-intervention programs for individuals with Lee's level of psychopathy and sexual deviance. Dr. Kenning concluded, and the judicial appeal panel agreed, that Lee's level of sexual sadism is severe. And because two members of Lee's family had died recently, Dr. Kenning also expressed concern that Lee may have difficulty managing any additional stress in his life. The judicial appeal panel assigned less weight to Dr. Kenning's opinion.

The judicial appeal panel found that Lee requires a low-to-moderate level of supervision. It also determined that the protective factors identified by Dr. Herbert "further mitigate [Lee's] risk for re-offense." The judicial appeal panel ultimately concluded that Lee's "course of treatment and present mental status indicate that there is no longer a need for treatment and supervision in his current treatment setting" and "conditions of [Lee's] plan will provide a reasonable degree of protection to the public

4

and will enable him to adjust successfully to the community." It concluded that the commissioner "failed to establish by clear and convincing evidence that the provisional discharge should be denied" and granted Lee's petition for provisional discharge. This appeal follows.

## DECISION

The commissioner argues that the judicial appeal panel clearly erred by provisionally discharging Lee because it credited opinions from experts who had inaccurate or untimely facts. We review judicial appeal panel decisions "for clear error, examin[ing] the record to determine whether the evidence as a whole sustains the appeal panels' findings and not weigh[ing] the evidence as if trying the matter de novo." *Larson v. Jesson*, 847 N.W.2d 531, 534 (Minn. App. 2014) (quotations omitted). We review the record "in a light most favorable to the [judicial appeal panel's] findings." *In re Civil Commitment of Ramey*, 648 N.W.2d 260, 269 (Minn. App. 2002), *review denied* (Minn. Sept. 17, 2002). "Where the findings of fact rest almost entirely on expert testimony, the [judicial appeal panel's] evaluation of credibility is of particular significance." *In re Knops*, 536 N.W.2d 616, 620 (Minn. 1995). A judicial appeal panel clearly errs if it ignores the "vast weight of the evidence." *Piotter v. Steffen*, 490 N.W.2d 915, 920 (Minn. App. 1992), *review denied* (Minn. Nov. 17, 1992). And an expert witness's opinion "must be based on facts sufficient to form an adequate foundation." *Albert Lea Ice & Fuel Co. v. U.S. Fire Ins.*, 239 Minn. 198, 203, 58 N.W.2d 614, 618 (1953).

A judicial appeal panel may provisionally discharge a committed person if it concludes that "the committed person is capable of making an acceptable adjustment to

5

open society." *Larson*, 847 N.W.2d at 534-35 (citing Minn. Stat. § 253D.30, subd. 1(a) (Supp. 2013)). The judicial appeal panel must consider two factors to determine whether provisional discharge is appropriate:

> (1) whether the committed person's course of treatment and present mental status indicate there is no longer a need for treatment and supervision in the committed person's current treatment setting; and
> (2) whether the conditions of the provisional discharge plan will provide a reasonable degree of protection to the public and will enable the committed person to adjust successfully to the community.

Minn. § 253D.30, subd. 1(b) (2014); *see also Larson*, 847 N.W.2d at 535.

Here, the commissioner asserts that the vast majority of evidence in the record demonstrates Lee's recent pattern of deterioration in his current treatment setting because (1) his Likert scale scores have been decreasing, (2) he has failed to attend and participate in treatment, (3) he has failed to complete assigned action plans, and (4) he remains a risk to the public. We turn to the expert testimonies to determine whether the evidence in the record supports the commissioner's assertion.

*Dr. Fox's testimony*

The commissioner argues that Dr. Fox did not offer a current, credible opinion on Lee's treatment status because she relied on insufficient facts from a nearly two-year-old treatment report. Based in part on Dr. Fox's testimony, the judicial appeal panel determined that Lee's treatment needs would be best addressed in the community. The judicial appeal panel also summarized Dr. Fox's testimony that Lee is rule compliant, follows therapeutic recommendations, and cooperates with his treatment team.

6

Dr. Fox testified that her recommendation for provisional discharge is based on discussions with the treatment team and the March 2014 SRB treatment report. But she also testified that she prepared for the first-phase hearing by reviewing the 2015 annual treatment report and speaking with Lee's primary therapist about the areas in his current treatment plan on which he was currently working. Dr. Fox noted that there had been recent improvement in the therapeutic alliance and Lee's ability to monitor and identify when he gets emotionally triggered. Dr. Fox was aware that Lee complained of treatment burnout, which she believed underscored a need for more challenges in treatment because there is only so much that can be done in his current programming. She also testified that Lee missed several therapy sessions because he had traumatic losses in his family. Finally, Dr. Fox stated that her opinion takes into consideration Lee's decreasing Likert scale scores.

Because Dr. Fox testified that she did not change her opinion after reviewing the 2015 annual treatment report and receiving recent input from Lee's treatment team, Dr. Fox's opinion before the judicial appeal panel was not based on inaccurate or untimely facts, and the judicial appeal panel did not clearly err by finding her opinion credible.

*Schiffer's testimony*

The commissioner also argues that the judicial appeal panel clearly erred by relying on Schiffer's testimony regarding Lee's current treatment needs because Schiffer relied on an addendum to the October 2015 SRB treatment report that does not adequately represent Lee's recent treatment presentation and does not consider Lee's

decreasing Likert scale scores. The judicial appeal panel determined that Schiffer's testimony was credible and that Lee has reached the greatest level of reintegration possible within his current placement.

Schiffer opined that Lee's treatment needs could be satisfied in the community, and he recommended that Lee be provisionally discharged. He testified that his opinion was based, in part, on the understanding that Lee consistently attended and participated in treatment and that he was not aware of any unexcused absences within the year that preceded the second-phase hearing. While the commissioner argues that Lee had at least seven recent absences from treatment, treatment notes only identify two *unexcused* absences. Three of Lee's absences noted that he was ill, had back pain, or was grieving the death of his niece. The remaining two stated that Lee was absent but do not identify whether his absence was excused or unexcused. Notwithstanding these absences, Schiffer's opinion that Lee's treatment could be managed in the community did not change even though, more recently, Lee participated minimally in many of his core group discussions. The judicial appeal panel found that Lee had missed several of his group sessions because he felt "burned out," but it credited Schiffer's testimony that this was a positive factor because Lee was being transparent about his state of mind.

Schiffer testified that his opinion takes other factors into consideration, such as Lee's failure to comply with certain portions of his action plan. The addendum to the October 2015 SRB treatment report stated that Lee followed through on his expectations. Schiffer agreed that Lee's not following certain portions of his action plan demonstrated

8

a failure to follow through on treatment expectations, but he stated that Lee's overall progress was nevertheless accurately outlined in the addendum.

Lastly, the commissioner argues that Schiffer's opinion is based on insufficient facts because Schiffer was not aware that Lee's Likert scale scores had decreased. While Schiffer agreed that some of Lee's scores have decreased, he testified that some have increased. He also stated that the language in the treatment reports reflects the treatment team's expectations of a person in phase 3 of treatment, at which point the treatment team would be looking for greater advancement and performance. Schiffer testified that, because Likert scale scores can be misused or misunderstood, he would give them less weight in forming an opinion.

We conclude that the judicial appeal panel did not clearly err by finding Schiffer's opinion credible. Lee's recent absences from treatment, decreasing Likert scale scores, and failure to comply with certain portions of his action plans *could* demonstrate deterioration in Lee's treatment programming. But Schiffer testified that his opinion, which does not emphasize these factors, did not change even after this information was presented to him because it is based on Lee's treatment presentation as a whole.

*Dr. Herbert's testimony*

The commissioner contends the judicial appeal panel clearly erred by relying on Dr. Herbert's opinion because she was unaware of Lee's decreasing Likert scale scores and recent treatment presentation and therefore lacked an adequate factual foundation for her opinion. The judicial appeal panel found Dr. Herbert's opinion credible.

9

Dr. Herbert testified that, as a forensic evaluator, her role is to opine on the statutory criteria for provisional discharge. She originally opined that Lee had not met the criteria for provisional discharge because he demonstrated some hostility toward women. But her opinion changed in her October 2015 risk-assessment update. At the second-phase hearing, Dr. Herbert testified that Lee's treatment needs could be met in the community and that this "next step seems to be appropriate at this time."

Dr. Herbert used the Static-99R risk-assessment test (which measures static risk), the Stable-2007 test (which assesses "dynamic risk and need"), the Acute-2007 test (which measures more acute dynamic risks), and the structured professional-judgment tool (which measures protective factors) to determine whether Lee would be a risk to the public. Lee scored a three on the Static-99R, which is a low-to-moderate risk. On the Stable-2007 test, Lee's original score of five was reduced to four, although both scores still placed him in the moderate-need category. Lee scored a two on the Acute-2007 for both sexual and violent recidivism and general recidivism. Dr. Herbert also testified that Lee "has a high degree of psychopathy" and that his composite score places him in the high-priority category for sexual and violent recidivism. But Lee's combined Static-99 and Stable-2007 scores place him in the low-to-moderate risk category. And Dr. Herbert identified a number of protective factors to further mitigate Lee's risk. The judicial appeal panel determined that Lee is in the low-to-moderate nominal-risk category for sexual recidivism, and it concluded that the protective factors identified by Dr. Herbert further mitigate Lee's risk for re-offense.

The commissioner contends that Dr. Herbert's opinion lacks an adequate factual foundation because Dr. Herbert did not have Lee's complete cognitive picture. Dr. Herbert testified that "having a complete cognitive picture of [Lee] is important to assess him fully." But because Dr. Herbert stated that neuropsychological examinations are outside the scope of risk assessments, the risk assessments alone provided a sufficient basis for her opinion.

The commissioner also contends that Dr. Herbert's lack of knowledge regarding Lee's decreasing Likert scale scores and her lack of consideration of Lee's failure to complete assigned action plans paint an inaccurate and incomplete picture of his current treatment presentation. While Dr. Herbert did not know that Lee's Likert scale scores have been decreasing, she knew that his scores were still between the satisfactory and proficient range. And she did not agree that Lee has been on a deteriorating course of treatment.

The commissioner further argues that Dr. Herbert's opinion to now support Lee's provisional discharge based on her view that Lee is now managing his hostility toward women is inconsistent with her unchanged opinion that Lee may lack transparency. Dr. Herbert testified that Lee's lack of transparency was one concern that underscored her recommendation against provisional discharge in 2014. In her 2015 assessment, Dr. Herbert noted that Lee's lack of transparency remains an area of concern, but she opined that Lee could continue to work on his transparency "as he transitions to a less secure setting." Dr. Herbert did not testify that her concern about Lee's lack of transparency was an overriding consideration. But she did testify that Lee's hostility

11

toward women is mitigated such that the previously documented concern should come off of the Stable-2007 test. The judicial appeal panel found that Lee "demonstrated an ability to manage his hostility specifically toward women" and "is open and honest and does not appear to be hiding anything."

Because Dr. Herbert's opinion is based on accurate facts in the record, we conclude that the judicial appeal panel did not clearly err by finding Dr. Herbert's testimony credible.

*Dr. Kenning's testimony*

The commissioner asserts that the judicial appeal panel clearly erred by assigning less weight to Dr. Kenning's opinion because she was the only expert witness with an adequate factual foundation. Specifically, Dr. Kenning was the only expert witness whose opinion was based on Lee's declining Likert scale scores, his absence from treatment and his noncompliance with assigned action plans, and the feasibility of his treatment in the community.

Dr. Kenning opined that Lee should not be provisionally discharged. She testified that Lee's scores suggest that his treatment course is mildly deteriorating. She stated that she expected Lee to be more involved in his treatment, given his stage in programming. Dr. Kenning also testified about a lack of established, documented methods for treating a person with Lee's level of severe sexual sadism. And she stated that the clinicians at Project Pathfinder, Lee's assigned community treatment center, have not dealt with a severe sexual sadist.

The judicial appeal panel acknowledged Dr. Kenning's opinions but assigned them less weight. It concluded that Lee does not require further treatment in his current treatment setting and that outpatient sex-offender treatment is appropriate for him. Our standard of review requires us to defer to the judicial appeal panel's role as fact-finder in its ability to judge the credibility of witnesses. *See Ramey*, 648 N.W.2d at 269. Because the judicial appeal panel assigned greater weight to the testimony of Dr. Herbert and Schiffer and less weight to Dr. Kenning's testimony, we conclude that the judicial appeal panel's determination that Lee is not on a deteriorating course of treatment is not clear error.

The commissioner relies on *Albert Lea Ice & Fuel* and contends that, because the expert opinions on which the judicial appeal panel relies did not consider Lee's recent pattern of deteriorating treatment, their opinions are based on inaccurate or untimely facts and are, therefore, of little evidentiary value. 239 Minn. at 203, 58 N.W.2d at 618. In *Albert Lea Ice & Fuel*, an experienced building contractor testified as an expert witness that undue pressure on one of the walls of an icehouse caused it to collapse. *Id.* But the expert failed to consider another plausible cause of the collapse that was supported by "strong and convincing testimony" in the record. *Id.* at 203-04, 58 N.W.2d at 618. Nor did the expert explain why he did not consider the other plausible option. *Id.* at 204, 58 N.W.2d at 618. The supreme court concluded that the expert's opinion was based on an inadequate factual foundation because the expert failed to explain why he excluded another plausible cause of the icehouse's collapse that was supported by strong

13

testimony. *Id.* Therefore, the opinion had no evidentiary value. *Id.* at 204-05, 58 N.W.2d at 618-19.

Here, the experts had factual foundations sufficient to form opinions. Each expert based his or her opinion on recent discussions with Lee's treatment team, quarterly and annual treatment reports, risk assessment reports, and observations from interviews with Lee. While cross-examination revealed that some of the expert witnesses were not initially aware of Lee's decreasing Likert scale scores or that he had recently been minimally involved in his treatment programming, the record supports the judicial appeal panel's determination that this evidence was not strong or convincing and did not mandate that Lee stay in his current treatment setting. Moreover, the experts concluded that their opinions were not changed once provided the more recent evidence of Lee's treatment presentation.

We recognize that a different judicial appeal panel may have credited Dr. Kenning's opinion and denied Lee's petition for provisional discharge. But that is not the standard that governs our review of this matter. Reviewing the record in the light most favorable to the findings of the judicial appeal panel, we conclude that the evidence as a whole supports the findings of the judicial appeal panel. Further, because the judicial appeal panel did not ignore the vast weight of the evidence by crediting the opinions of Dr. Fox, Schiffer, and Dr. Herbert, its order provisionally discharging Lee from MSOP is not clear error.

**Affirmed.**