# KALLE KOIVISTO v. BANKERS & MERCHANTS FIRE INSURANCE COMPANY.[1]

## February 18, 1921.

## No. 22,120.

**Insurance—parol contract with local agent for present insurance.**

1. A parol contract for present insurance made by a local agent of an insurance company, if within the scope of his authority, is binding upon the company.

**Powers of local agent liberally construed.**

2. The powers of such an agent are prima facie coextensive with the business entrusted to his care, and will not be narrowly construed nor restricted by limitations not communicated to those with whom he deals. Powers specifically granted to him carry with them by implication such other and incidental powers as are directly appropriate to the specific power granted.

**Authority of local agent to make binding preliminary contract.**

3. Defendant's local agent had power to take applications for insurance, receive premiums and deliver policies when issued at defendant's home office. He had a state license authorizing him to conduct all lawful business of the defendant in this state. It was defendant's practice to date its policies back to correspond with the date of the applications. Premiums were applied in part to pay for insurance from that date. *Held* that, in view of its practice, its agent should be presumed to have implied authority to make a binding preliminary contract of insurance to attach on the day when an application was taken and the premium paid and to continue until a policy was issued or the application rejected and the applicant notified, and a finding that he had authority to make such a contract was justified.

[1]Reported in 181 N. W. 580.

**Implied authority defined.**

> 4. Apparent authority is not actual authority. Implied authority is actual authority circumstantially proved and is the authority the principal intended his agent to possess and includes all things directly connected with and essential to the business in hand.

Action in the district court for St. Louis county to recover $900 upon a fire insurance policy. Defendant's demurrer to the amended complaint on the ground that several causes of action were improperly united and that the facts stated did not constitute a cause of action was overruled, Cant, J. The case was tried before Dancer, J., who made findings and ordered judgment in favor of plaintiff. From an order denying its motion to amend the findings and conclusions and order for judgment, or for a new trial, defendant appealed. Affirmed.

*Courtney & Courtney,* for appellant.

*John R. Heino* and *M. E. Louisell,* for respondent.

LEES, C.

This is an action to rocever on a policy of fire insurance.

Among other things, the complaint alleged that on October 2, 1918, plaintiff made a written application for insurance to defendant's agent Mattson and paid him the premium therefor. Mattson accepted the application and agreed with plaintiff that the insurance should be in force as of that date and that a policy would be subsequently delivered.

The answer admitted that Mattson was defendant's agent, but alleged that his authority was limited to receiving written applications for insurance, which were subject to defendant's approval at its home office in Minneapolis.

The case was tried without a jury. The court found that on October 2 Mattson took plaintiff's application for the insurance of his property for three years from that date, received and receipted for the premium, and stated to plaintiff that the insurance then went into effect; that plaintiff believed and relied on the statement; that plaintiff had a meager knowledge of the English language and was unable to understand the contents of the application unless interpreted to him; that Mattson did not disclose to plaintiff that there was a statement in the application that it was subject to the approval of defendant's secretary

or general agent; that Mattson had apparent authority to make contracts of insurance in defendant's behalf of the character of the contract he entered into, and that on October 12, 1918, no policy having been issued, the plaintiff's property was totally destroyed by fire. Judgment was ordered in plaintiff's favor for the amount of the insurance agreed upon. Defendant moved for amended findings, and, if denied, for a new trial, and appeals from an order denying its alternative motion.

If the finding respecting Mattson's authority is sustained, the motion was properly denied, otherwise it should have been granted. At the time in question Mattson was cashier of a bank at Kettle River in this state and also had a fire insurance agency, representing defendant and five other companies. Defendant wrote insurance on farm risks. The other companies did not. Plaintiff's property consisted of farm buildings. Mattson had received printed instructions from defendant. They could not be found. Asked what they were, he answered:

"The custom was just to fill out the application and mail it to the company for their consideration and acceptance, and if accepted, why, we would get the policy; if not, we would get the application back with a letter why it was rejected or refused."

Asked whether he had authority from the defendant to place insurance on farm risks forthwith, he answered:

"No, sir, no authority whatever except insurance which was written on application."

He also testified that, if an application was accepted, the policy would usually be dated back to the date of the application; that he mailed plaintiff's application to defendant on the day he took it, but retained the money paid as the premium; that he was to keep the policy for plaintiff if one was issued; that no policy was issued, but the application was returned to him with a letter dated October 9, 1918, rejecting the risk. In this letter defendant said:

"We cannot write this business any more and would ask you not to send us any coverage on log buildings as our reinsurance company positively refuse to carry same. We are sorry we are in this position and will do anything we can to make up for it in every way."

Plaintiff's buildings were partly of logs. The letter indicates that Mattson had no previous information that defendant would not insure

such buildings. Plaintiff lived in Superior, Wisconsin, and Mattson did not see him until the following December, when he returned the application and offered to refund the premium, but plaintiff refused to receive it. Mattson had an agent's license, issued by the department of insurance, authorizing him to conduct all lawful business of the defendant in this state until March, 1919.

Defendant's superintendent of agencies testified that all policies issued usually bore the same date as the application. In response to questions put by the court he admitted that, if a loss occurred after an agent took an application and before the policy was issued, defendant would not be bound to pay it, although the premium was applied to cover insurance during the interim.

One of plaintiff's witnesses testified that in 1916 he had applied to Mattson for insurance on farm property and obtained a policy issued by defendant bearing the same date as the application; that he told this to the plaintiff and advised him to go to Mattson for insurance.

In a memorandum following the findings, the learned trial·judge said this is a border-line case, that probably his decision was not in harmony with Morse v. St. Paul F. & M. Ins. Co. 21 Minn. 407, but that the Morse case is not in line with the present day holdings. He referred to Kilborn v. Prudential Ins. Co. 99 Minn. 176, 108 N. W. 861, and to Hertz v. Security Mut. Ins. Co. 131 Minn. 147, 154 N. W. 745, as indicating somewhat of a departure from the doctrine of the Morse case.

Plaintiff refers also to Kausal v. Minn. F. Mut. F. Ins. Assn. 31 Minn. 17, 16 N. W. 430, 47 Am. Rep. 776, where Judge Mitchell, speaking of insurance agents, said that the companies supply them with printed blanks, stimulate them by the promise of liberal commissions, and send them abroad to solicit insurance. Those who apply for it rarely know anything about the general officers of the companies, but look to the agents as their full and complete representatives, and, in view of the apparent authority with which the companies clothe them, they have a perfect right to consider them such.

We may not close our eyes to the fact that the local agent of an insurance company is the medium through whom the business of making insurance contracts is usually carried on. Such agents frequently make

parol contracts for present insurance, and such contracts, if within the scope of the agent's authority, are perfectly valid. Quinn-Shepherdson Co. v. U. S. F. & G. Co. 142 Minn. 428, 172 N. W. 693; Wieland v. St. Louis F. M. F. Ins. Co. 146 Minn. 255, 178 N. W. 499; Eifert v. Hartford Ins. Co. supra, page 17.

An insurance agent's powers are prima facie coextensive with the business entrusted to his care and will not be narrowed by limitations not communicated to those with whom he deals, Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L. ed. 617, and his authority is not to be narrowly construed. St. Paul F. & M. Ins. Co. v. Parsons, 47 Minn. 352, 50 N. W. 240; Kerr, Insurance, pp. 153, 156. The power specifically granted to an agent carries with it by implication such other and incidental powers as are directly or immediately appropriate to the execution of the specific power granted. Ermentrout v. Girard F. & M. Ins. Co. 63 Minn. 305-310, 65 N. W. 635, 30 L.R.A. 346, 56 Am. St. 481; Watts v. Howard, 70 Minn. 122, 72 N. W. 840; Burchard v. Hull, 71 Minn. 430, 74 N. W. 163; Kilborn v. Prudential Ins. Co. supra; Kerr, Insurance, p. 154. Mattson was authorized to secure applications for farm insurance, collect premiums and deliver the policies when issued.

Did such authority carry with it, by implication, power to make a binding preliminary contract of insurance covering the interval between the date of the application and the date when defendant accepted or rejected it? If he could not bind defendant by such a contract, it might consider and pass on an application at its leisure and apply part of the premium towards paying for insurance during a period when the applicant had no protection. To charge an applicant for insurance for a term beginning with the date of the application, although the insurance did not go into effect until the policy was issued, would be manifestly unjust. We will not presume that defendant intentionally dealt so unfairly with its patrons. Its habitual practice of dating its policies back indicates an intention to protect applicants from the time their applications were taken. The contract Mattson made with plaintiff was directly connected with and essential to the transaction of the business in hand. It served substantially the same purpose as a binding slip. If a policy was issued, it would, of course, supersede the preliminary contract. Until it was issued or the application was rejected and the ap-

plicant notified so that he would have an opportunity to get insurance elsewhere, we think it should be presumed, in view of its practice in dating policies, that defendant intended that its agents should have power to provide for the protection of the applicant by a contract such as Mattson made with plaintiff.

In Greenwich Ins. Co. v. Waterman, 54 Fed. 839, 4 C.C.A. 600, Judge Taft said that, if there is a usage by which a local agent who takes applications for insurance may make a contract for preliminary insurance to attach on the same day, a verbal contract so made is binding on the company, whatever the agent's private instructions may have been; that an insurance company is charged with notice of such usage, and, by appointing a local agent, clothes him with apparent authority to bind it in accordance with the usage, if reasonable; that the fact that the agent had no power to issue policies was not inconsistent with possession of authority to make such contracts, and that no foreign company could do business without making some arrangement to effect binding insurance from the date of an application therefor. This appeals to us as a just and salutary doctrine, which accords with sound business practices, of which we should take notice.

We are of the opinion that defendant's practice in dating policies furnished a sufficient basis for a finding that Mattson had authority to enter into a preliminary verbal contract for present insurance, binding upon defendant until plaintiff was notified that his application had been rejected. It is not important whether we call his authority apparent or implied. Apparent authority is not actual authority. Implied authority is actual authority circumstantially proved. It is the authority which the principal intended his agent to possess. It includes all such things as are directly connected with and essential to the business in hand. Dispatch Printing Co. v. National Bank of Commerce, 109 Minn. 440, 124 N. W. 236, 50 L.R.A.(N.S.) 74; Johnson v. Evans, 134 Minn. 43, 158 N. W. 823; Bloomingdale v. Cushman, 134 Minn. 445, 159 N. W. 1078. The evidence that tends to show implied authority may show apparent authority. The distinction is useful, but is not always observed and frequently there has been some confusion. Schauble v. Hedding, 138 Minn. 187, 164 N. W. 808. The ultimate fact to be determined was whether Mattson had any authority of any kind to make

a preliminary contract of present insurance.

We are not concerned with the correctness of the court's classification of Mattson's authority. The question is whether there was evidence to support a finding that there was authority. For the reasons indicated, we are satisfied that there was such evidence, and therefore the order denying a new trial is affirmed.