MARIE JOHNSON AND ANOTHER v. CARL OSTENSO, BY HIS GUARDIAN AD LITEM, OLAF OSTENSO.
CHEESE MAKERS MUTUAL CASUALTY COMPANY, THIRD-PARTY DEFENDANT.

84 N. W. (2d) 269.

July 5, 1957—No. 37,133.

*P. M. Meehl* and *Glenn Catlin,* for appellant.

*Nelson & Oyen,* for respondent third-party plaintiff.

DELL, CHIEF JUSTICE.

Appeal from an order of the district court denying the motion of the third-party defendant, hereinafter referred to as the company, for an order amending findings of fact and conclusions of law, or in the alternative for an order setting aside the findings and conclusions and order for judgment and granting it a new trial.

Defendant Carl Ostenso, who is also third-party plaintiff, hereinafter referred to as Ostenso, age 19, purchased a 1950-model Studebaker automobile on January 10, 1955. He tried to get liability insurance with his "father's company" and was refused; also from another company and was apparently declined on account of his age. Ostenso testified that, failing in those efforts to obtain insurance, he had a conversation on the evening he bought the car with one Melvin C. Wik, cashier of the Union State Bank in Montevideo, and was informed that if he could not get insurance anywhere else he should come up and see Wik who would get insurance for him. Ostenso went to see Wik at the bank in Montevideo the following morning, January 11.

According to the complaint of Ostenso, admitted by the answer of the company, Wik was authorized by the company to take applications on the part of the company for automobile liability insurance although he was not a licensed agent to write insurance in its behalf. Printed application forms were furnished Wik by the company for the purpose of securing applications. The company claims he was neither its licensed

agent nor an authorized subagent or a licensed subagent, but that at the most he was only authorized to take applications for insurance and to transmit them to the company.

About 11 a. m. on January 11, 1955, Wik filled out an application form for liability insurance with the company which was signed by Ostenso. On the application form the following is printed: "If this application is approved, please make policy effective on (Date)——." January 11, 1955, was the date filled in in the blank space on that form. Ostenso testified that Wik told him that if the application (policy) was accepted it would be good as of that date (January 11, 1955) which "was o.k. with me." Ostenso then paid Wik the $30 premium for three months' coverage.

At about four o'clock on the same afternoon, while it was snowing, Ostenso struck a pedestrian, Marie Johnson, one of the plaintiffs in a complaint filed against Ostenso for damages in this action. The accident occurred on a street in Montevideo. Around six o'clock that evening Ostenso went to Wik's house and informed him of the accident. Thereafter the policy of insurance was issued by the company but the effective date was given in the policy as January 12, 1955. Ostenso testified that he received the policy and that the insurance premium was never returned to him.

At a pretrial conference it was stipulated that Ostenso, third-party complainant, be considered as a complainant in an action to amend and reform the insurance policy referred to herein alleged to have been issued by the company in favor of Ostenso. It was further stipulated that the action between Ostenso and the company be tried as an equitable action for the purpose of reforming said policy prior to the trial of the action of the plaintiffs, Johnsons, against Ostenso.

The case was tried before the court without a jury. The court found that on January 11, 1955, the company was authorized to carry on its insurance business in the State of Minnesota; that Wik was authorized by it to accept applications for insurance to be issued by the company and that he was an agent for the company; that Ostenso applied to Wik for liability insurance on his automobile and executed a written application prepared by Wik for insurance against such liability and paid the latter the sum of $30 as a premium for insurance; that said

application recited that the policy should become effective as of January 11, 1955, which effective date was entered therein in pursuance of an oral agreement between Wik and Ostenso on that date; that contrary to the agreement between Wik, its agent, and Ostenso, and contrary to the provisions of the written application, the company issued its policy to Ostenso to become effective from January 12, 1955, to April 12, 1955; that on January 11, 1955, after execution of the application for the insurance and after the payment of the premium, Ostenso while operating his automobile drove it into and against Marie Johnson, one of the plaintiffs in the above entitled action, from which she sustained injuries; that the policy of insurance was never cancelled; and that the company refused to accept and assume liability under the policy for the accident and refused to defend Ostenso in the action brought against him by the plaintiffs, Johnsons, as required by the policy.

The court concluded that the policy be reformed in that the effective date be January 11, 1955, instead of January 12, 1955, as therein specified.

After a review of the briefs and record and upon consideration of the various claims of the parties, we deem it necessary for a decision in this case to discuss only the following contentions of the defendant insurance company: (1) That Wik did not have the authority to agree with Ostenso that if the policy was issued it would be dated as of January 11, and (2) that the insurance policy as issued was for a different amount from that asked in the application and therefore was not an acceptance of the application but a counteroffer.

■ In respect to the first issue, the trial court found that Wik was authorized to accept applications for insurance and that he was an agent of defendant insurance company. The pleadings established that he was at least a soliciting agent although not an agent licensed to write insurance for the company. The application blanks furnished by the company designated Wik as agent. Furthermore, the insurance company's daily worksheets designated Wik as an agent. Thus there is ample evidence to support that finding.

The real question arises under the finding of the court with reference to the oral agreement between Wik and Ostenso. There is ample evi-

dence from which the court could find that Wik had agreed that if the policy was accepted it would be effective as of January 11, 1955. The question then becomes whether or not the evidence supports an inference that Wik had authority to make such an agreement. The trial court in its memorandum, among other cases, cited Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28, as controlling. In that case the court found that one Kelly had authority to make an oral contract of fire insurance binding upon the defendant insurance company. Kelly was not licensed to write insurance for the company but did in fact solicit business for an agent who was authorized to write insurance. The court in that case, after finding that the authorized agent could appoint subagents, found that Kelly had sufficient authority to bind the company on oral contracts of fire insurance. In so holding the court pointed out that the insurance agents are supplied with printed blanks, stimulated by promises of liberal commissions and sent abroad to solicit insurance; also that people who apply for insurance seldom know anything about the general officers of the companies (214 Minn. 261, 8 N. W. [2d] 34) "but look to the agents as their full and complete representatives" and that "the court 'may not close' its eyes to the obvious fact 'that the local agent of an insurance company is the medium through whom the business of making insurance contracts is usually carried on,' and that they as 'such agents frequently make parol contracts for present insurance.'"

In the instant case it is not necessary to find Wik's authority through a principal who was an authorized agent of the company. Whatever authority he does have stems directly from the insurance company itself. Furthermore, in this case it is not necessary to go so far as to say that Wik had the authority to write binding contracts of oral insurance. The record shows that Wik informed Ostenso that his application had to be accepted by the defendant insurance company in order for him to have insurance. *It was only necessary here for the trial court to find that the agent had authority to say upon what date the policy would be effective.* Here the company admitted that Wik had authority to solicit business for it. It supplied him with application blanks on which he was designated as agent and, as pointed out above, designated him as agent on their daily worksheets. Moreover, the application blanks fur-

nished by the company to its agent, Wik, for his use in soliciting insurance, specifically provided for the agent to insert an effective date in the application for the commencement of the policy. By so doing it would seem clear that the company impliedly authorized Wik to fix the effective date for the commencement of the policy if one was to be issued. "Implied authority is actual authority circumstantially proved. It is the authority which the principal intended his agent to possess. It includes all such things as are directly connected with and essential to the business in hand." Koivisto v. Bankers & Merchants Fire Ins. Co. 148 Minn. 255, 260, 181 N. W. 580, 582.

In view of these uncontradicted facts and viewing the evidence in the light most favorable to the third-party plaintiff, as we must in this case, we certainly cannot say that the findings are so manifestly and palpably contrary to the evidence that the trial court erred in not finding that Wik was unauthorized to make this agreement.

■ With respect to the company's second contention that the policy as issued was for a different amount than applied for in the application, it claims that the policy did not constitute an acceptance of the offer but was a counteroffer. It is true that the application placed in evidence shows the amount of insurance sought as $25,000-$50,000 bodily injury and $5,000 property damage, and that the policy issued was for $10,000-$20,000 bodily injury and $8,000 property damage. The third-party complaint alleged that Ostenso, in his application, applied for insurance against bodily injury for $10,000 for one person and for $5,000 property damage arising out of one accident and that the premium for such insurance was $30. It also alleged that the policy of liability insurance issued by the company was "in all respects as requested in said application except that the effective period of said insurance was therein stated to be from January 12, 1955, to April 12, 1955, and not commencing January 11, 1955, as requested in said application." The answer of the third-party defendant insurance company specifically admitted these allegations and, therefore, no issue was raised in the pleadings with respect to whether the application was for an amount different from the actual policy issued. Furthermore, the evidence shows that the premium of $30, transmitted by the agent, Wik, to the company was the identical amount necessary to pay for a $10,000-$20,000 bodily

injury and $5,000 property damage policy. This premium was retained by the company and was never returned to Ostenso and it should not be overlooked that when the third-party complaint was drawn the application was in the possession of the company where it presumably remained until the pretrial conference. It is also significant that a pretrial conference was held and no attempt was made at that time or at any subsequent time by the insurance company to amend its answer. In fact there is nothing in the record to indicate that the company was going to rely on a showing that the amount of insurance on the application differed from the amount of the policy issued. On oral argument counsel for Ostenso pointed out that, if this issue had not been removed from the case by the admissions in the pleadings, evidence would have been offered to explain the difference in amounts. The insurance company further contends that this factor was litigated by consent in view of the fact that the application and insurance policy were placed in evidence and therefore the differences in amounts were in evidence.

In Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 234, 67 N. W. (2d) 400, 403, this court said with respect to litigation by consent:

"* * * Issues litigated by either express or implied consent are treated as if they had been raised in the pleadings. Consent is commonly implied either where the party fails to object to evidence outside the issues raised by the pleadings or where he puts in his own evidence relating to such issues. The question must, of necessity, be decided on the particular facts of each case.

"* * * It is obvious that consent to try an issue outside the pleadings cannot be implied where the evidence is pertinent to issues actually made by the pleadings."

Under the pleadings it was incumbent upon the third-party plaintiff, in making out his case, to prove (1) that the effective date for the policy specified in the application was January 11, 1955, and (2) that Wik was the "agent" of the company, for these things were denied by the third-party defendant in its answer. It is, therefore, clear that the application was received in evidence upon pertinent issues actually made by the pleadings and in this situation, as pointed out in the Roberge

case, it is obvious that consent to try an issue outside the pleadings cannot be implied. We are not faced here with a situation where the question has not been pleaded at all but litigated in the course of the trial. Here the defendant affirmatively indicated to the plaintiff that there would be no issue in this case in regard to whether the policy was different in amount from the application. After he had been led to believe accordingly, it would be very prejudicial to hold that, because collateral facts had come into evidence through documents which had been introduced for an entirely different purpose, the question could now be raised for the first time on appeal. It is our opinion that under the facts and circumstances of this case the issue was not litigated by consent and the policy must be considered as having been issued in all respects as requested in the application except for the effective date of said policy.

Affirmed.