JAMES G. HUMENIK v. JOSEPH T. SIWEK, SPECIAL ADMINIS-
TRATOR OF ESTATE OF JOHN J. SIWEK, AND OTHERS.
ANCHOR CASUALTY COMPANY, THIRD-PARTY
DEFENDANT.

124 N. W. (2d) 191.

October 18, 1963—Nos. 38,785, 38,876.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *M. J.
Coyne,* for appellant.

*Neville, Johnson & Thompson, Richard W. Johnson,* and *Robert D.
Stiles,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Appeals by Anchor Casualty Company, third-party defendant referred to herein as Anchor, from an order denying its motion for a new trial; and from a judgment to the effect that on March 30, 1955, an oral contract of automobile liability insurance was in effect between it and third-party plaintiffs under which it was liable for injuries arising out of an accident which occurred on that date and which involved a 1950 Oldsmobile automobile then owned and operated by John J. Siwek, deceased.

The facts are as follows: During the latter part of 1954, John J. Siwek, then a minor, became the owner of a 1950 Oldsmobile 88 club coupe. At that time his father, Joseph T. Siwek, was the owner of a 1953 Dodge automobile. Each of these automobiles was insured under a separate policy by Anchor. Late in November 1954, John entered military service, and on November 23, 1954, his policy was canceled and certain liability coverage for the Oldsmobile was included by endorsement in the policy on the Dodge. The Oldsmobile was parked with the Dodge in the garage of Joseph T. Siwek at 42 23rd Avenue Northeast, Minneapolis. In March 1955 John returned home on leave and on March 30, 1955, while driving the Oldsmobile, was involved in an accident in which he lost his life.

In August 1956 the present action was commenced by plaintiff, James G. Humenik, against Joseph T. Siwek, Frances M. Siwek, and the estate of John J. Siwek for injuries sustained in this accident. In October 1959 defendants interposed a third-party complaint against Anchor, in which in substance they alleged:

That under its automobile liability insurance policy Anchor had agreed to insure Joseph T. Siwek against liability for bodily injuries, property damage, and medical payments arising from the operation of his 1953 Dodge automobile.

That by an endorsement added to such policy effective as of November 23, 1954, Anchor had agreed to insure Joseph T. Siwek against liability for bodily injuries, property damage, and medical payments "when he or the deceased, John J. Siwek, were operating the 1950 Oldsmobile Club Coupe" belonging to John J. Siwek.

That prior to making such endorsement Anchor, through its agent Arthur Shasky, had made representations to Joseph T. Siwek, assuring him that such endorsement would afford full liability coverage in the operation of the Oldsmobile (to the extent of policy limitations) for himself and in addition for John J. Siwek while the latter was on leave from military service.

That the policy and endorsement described was in effect at the time of an accident on March 30, 1955, in which the 1950 Oldsmobile was involved while John J. Siwek was operating it while he was on leave from military service; that at that time John J. Siwek had been driving the Oldsmobile in reliance upon the representations made by Anchor to the effect that he was fully covered while so doing.

That under the terms of the policy and endorsement Anchor was liable for all claims against Joseph T. Siwek and the estate of John J. Siwek for injuries and damages arising out of the accident to the extent of the coverage of such policy and for any attorney's fees, costs, and expenses incurred in defending the action.

In its answer to the third-party complaint, Anchor admitted that on March 30, 1955, an automobile accident had occurred involving the 1950 Oldsmobile while John J. Siwek was driving it and that its policy issued to Joseph T. Siwek was then in force, but denied that this policy or the endorsement described in the third-party complaint extended coverage to the Oldsmobile while it was being operated by John J. Siwek.

In addition to the foregoing the answer contained the following allegation:

"Specifically denies that there was any oral contract contrary to the written contract as evidenced by the policy and endorsement issued to Joseph T. Siwek * * * [and] that any policies of insurance were in effect on March 30, 1955, covering the third-party plaintiffs for the accident referred to in the complaint of the third-party plaintiffs or the complaint of the plaintiff."

The endorsement referred to contained the following language:

"MORE AUTOMOBILES THAN OPERATORS.

"It is agreed that such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability with respect to any automobile owned by the named insured and included in the groups designated below by (x) applies to the following provisions:

"1. * * * The insurance applies to the use of the automobile only while operated by

"(a) an operator named below;

*   *   *   *   *

"2. * * * The named insured declares that the policy contains a complete list of all automobiles owned by him at the effective date of the policy and included in the groups designated below by (x).

"Names of Operators *Joseph T. Siwek, Sr.*

"(x) All automobiles. *42 23rd Avenue Northeast, Minneapolis, Minn.*

*   *   *   *   *

"Effective Date of this Endorsement *November 23, 1954.*"

On appeal Anchor contends (1) that the action was instituted and tried on the theory that the endorsement described had been represented to third-party plaintiffs by Arthur Shasky, Anchor's agent, as extending full coverage to the operation of the Oldsmobile by John J. Siwek while on leave from military service, but that the court had imposed liability upon Anchor on the theory that a complete new oral contract for insurance had been made 5 months after the endorsement shortly before John's return from military service; and (2) that the evidence failed to sustain a finding that such a new oral contract had been made.

Joseph T. Siwek and Frances M. Siwek, his wife, each testified that John's policy had been canceled and the Oldsmobile added to Joseph's policy by the endorsement to avoid the expense of maintaining two separate policies while John was in the service.

Mrs. Siwek testified that while John was away her husband was the only one in the family who knew how to drive; that no one would be using the Oldsmobile except that Joseph might occasionally drive it to keep it in running order but that they desired to maintain the fire insurance on it; and that she had called Art Shasky (Anchor's agent)

and told him that John "was going in the service so it wasn't necessary for him to keep up his full coverage." Later she testified that "Mr. Siwek most probably did take care of it"; that she did not remember exactly what had happened but that as a result of the talk with Mr. Shasky she was assured that the policy on John's Oldsmobile had been canceled and both cars were then placed under the policy of Joseph; but that she had had no talk with Mr. Shasky before August 1955 as to the meaning of the endorsement. In a previous deposition she had testified that she understood that both automobiles would be covered while Joseph Siwek was driving one or the other, as he was the only one that would be driving. When her attention was directed to this, she stated that her mind "was a mumble-jumble at that time" and that she did not remember everything; that she had just glanced at the endorsement when she received it.

However, she later testified without objection that on March 26, 1955, after she had received a letter from her son informing her that he would be coming home on leave, she had called Mr. Shasky and told him "My boy is coming home Sunday night, or one of these days, and we would like to put the coverage back on his car"; and that Shasky had then replied, "Well, he is covered, and then if he intends to take the car back to the service with him, then we will put them [the policies] both back on again." She also testified that she had found Mr. Shasky to be honest and dependable and always relied upon him.

Joseph T. Siwek testified that in December 1954, shortly after John left for the service, he had visited Mr. Shasky at his office and requested him to rearrange the insurance on John's car so as to avoid unnecessary expense; that he had then told Shasky that John was entering the service and there would be two automobiles at his home with but one driver; that Shasky did not explain to him what he was going to do to save them money on the premiums but merely said that he would send the papers; that later for $37 additional premium the second car was added to his policy on the Dodge; and that he had received the endorsement described in the mail and added it to the policy.

Art Shasky testified that he had no recollection of any conversa-

tion with Mrs. Siwek before the accident and that he did not know until after the accident that John had returned; that after the accident he had told the Siweks there wasn't any coverage under the policy as it covered only Joseph T. Siwek as far as the Oldsmobile was concerned; that he recalled that when he learned that John was going into service he had talked with Joseph and had advised him to cancel the policy on the Oldsmobile and include it in the other policy to save on the premium; and that this had been done and a refund made for such cancellation and the endorsement above described had then been issued.

In its findings the trial court set forth the following:

"That on Friday, March 25, 1955, as had been the custom and practice between the parties, defendant Frances M. Siwek, the mother of deceased, called said insurance agent Shasky and informed him that the boy John was coming home, would be driving the car and might take it back with him when he went back for his service, and that they would want the policy for the boy to be in full force and effect as it had been theretofore, it appearing that prior to that time there had been a policy issued for that car * * *.

"That at the time of said call, the agent Shasky informed Mrs. Siwek that the boy was covered and the car was covered on his return, and that if he took the car back with him when he went back to service, that he would take care of that also; that under such assurance the boy did drive the car and was driving the car on the evening of March 30, 1955, when the accident occurred * * *.

"That after said conversation, the defendants and third-party plaintiffs Frances, Joseph and John Siwek did believe and had every right to believe that they were covered by insurance when the deceased John drove the car, and that in truth and in fact such conversation constituted an oral contract of insurance which bound third-party defendant herein * * *; that defendants and third-party plaintiffs Joseph T. Siwek and John J. Siwek, deceased, are entitled to the issuance of such a policy in accordance with that verbal binder and agreement on payment of the additional premium of $128.38 which was the regular premium for the full coverage which said policy contemplated."

In a memorandum attached to and made a part of the findings, the trial court stated:

"The third-party defendant * * * claim[s] that the statement which Mrs. Siwek testified Shasky made, that the boy and his car were covered, was merely an opinion of Shasky's and did not constitute a binder or contract of insurance. (Incidentally, this testimony by Mrs. Siwek was not in any way denied. The furthest Shasky went was that he did not remember such a conversation.)

\* \* \* \* \*

"* * * It seems to have been conceded in all of the recent cases that, granted authority (which is conceded here), an assurance such as here given by the agent Shasky is a contract or binder of insurance the same as though a policy had actually been written or issued. * * *

"Here, the agent Shasky, when he made the statement to Mrs. Siwek that the boy and the car were covered, knew all the facts * * *. His statement does, in the opinion of this Court, constitute a contract and a binder on the third-party defendant, and although his agency is conceded for all purposes here, the long course of business dealings between him and the Siweks would make clear that that agency could properly be relied on by them. The Siweks believed they were covered and had a right to so believe. The statements of the agent bound the third-party defendant, and they should cover the third-party plaintiffs to the extent of the limit of their policy in the plaintiff's case."

■ Examination of the pleadings, as well as the trial procedure, establishes that the parties fully litigated the issue as to whether an oral contract of automobile liability insurance covering John J. Siwek in his operation of the Oldsmobile was in existence on the date of the accident. In its answer to the third-party complaint Anchor specifically denied that there was any oral contract contrary to the written contract as evidenced by the policy and endorsement issued to Joseph T. Siwek; and also denied that any policy of insurance was in effect on March 30, 1955, which covered the liability of third-party plaintiffs arising out of the accident occurring on that date. Ordinarily a complaint which fails to allege a material fact so as to tender an issue

with reference thereto may be aided and the omission cured by an answer which tenders an issue with respect to such fact either by specifically denying it or by alleging the opposite or converse thereof. 41 Am. Jur., Pleading, § 402. Likewise, where the parties have joined in an issue which has been tried, a defect in the pleadings may be cured by a verdict or finding however defective the pleadings may be. 41 Am. Jur., Pleading, § 404.

■ Here the record establishes that the issue above described was tried by the litigants without objection. At no time during the trial did Anchor oppose the submission of evidence relating to it. Mrs. Siwek testified without objection as to the conversation between her and Mr. Shasky (conceded to be Anchor's agent), wherein she was assured by him that her son was "covered" in his operation of the Oldsmobile while home on leave from the service. In rebuttal Mr. Shasky testified that he had no recollection of such a conversation but did not deny that it had taken place. When the case was submitted at the close of the testimony, Anchor interposed no motion to exclude a finding on this issue because it had not been covered by the pleadings. At this state of the proceedings both third-party plaintiffs and Anchor regarded it as one which the court would have to determine. Likewise, after the court had found the existence of an oral contract, Anchor in its motion for amended findings made no claim that this issue was not involved in the litigation or raised by the pleadings. Therein it merely sought to have the court determine that there had been no conversation sufficient to establish such a contract, and that "there was no oral binder or contract of insurance in effect which was binding on the third-party defendant."

The issue having been litigated by consent, under Rule 15.02,[1] Rules of Civil Procedure, the court was authorized to make a finding there-

---

[1]Rule 15.02, Rules of Civil Procedure, provides in part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."

on in the same manner as though it had been raised by the pleadings. Woodruff v. Bearman Fruit Co. 108 Minn. 118, 121 N. W. 426; Vaillancour v. Minneapolis & St. Louis R. Co. 106 Minn. 348, 119 N. W. 53; see, Johnson v. Ostenso, 250 Minn. 213, 84 N. W. (2d) 269; Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400.

■ The evidence submitted in our opinion was adequate to support the finding that on the date of the accident an oral contract of automobile liability insurance covering John J. Siwek while driving the Oldsmobile was in effect; and that third-party plaintiffs were entitled to the issuance of such a policy on payment of the additional premium required therefor. Mrs. Siwek's testimony that on March 26, 1955, she had been assured by Mr. Shasky, agent for Anchor, that John was "covered" in his operation of the Oldsmobile while home on leave from the service was firm and consistent, both in her direct and cross-examination. At no time was it denied by Mr. Shasky. That such evidence is sufficient to support a finding that a binding contract of insurance was thereby created is well established. Nehring v. Bast, 258 Minn. 193, 103 N. W. (2d) 368, 85 A. L. R. (2d) 1400; Koivisto v. Bankers & Merchants Fire Ins. Co. 148 Minn. 255, 181 N. W. 580. As stated in the Koivisto case (148 Minn. 258, 181 N. W. 582):

"We may not close our eyes to the fact that the local agent of an insurance company is the medium through whom the business of making insurance contracts is usually carried on. Such agents frequently make parol contracts for present insurance, and such contracts, if within the scope of the agent's authority, are perfectly valid. Quinn-Shepherdson Co. v. U. S. F. & G. Co. 142 Minn. 428, 172 N. W. 693; Wieland v. St. Louis F. M. F. Ins. Co. 146 Minn. 255, 178 N. W. 499; Eifert v. Hartford Ins. Co. supra, page 17."

It was for the trial court to find whether the conversation described by Mrs. Siwek had taken place; and having so determined, this court is bound under well-established rules to uphold the finding as an established fact. Delyea v. Turner, 264 Minn. 169, 118 N. W. (2d) 436; Gifford v. Vore, 245 Minn. 432, 72 N. W. (2d) 625.

Affirmed.