EVELYN MORRISON AND ANOTHER v.
JOHN D. SWENSON AND ANOTHER.
GEORGE J. AUMER, THIRD-PARTY PLAINTIFF.
ARROW INSURANCE COMPANY, APPELLANT.

142 N. W. (2d) 640.

May 13, 1966—No. 39,660.

---

[10] Minn. Const. art. 6, § 5; Minn. St. 484.01. See, also, State ex rel. Koalska v. Swenson, 241 Minn. 278, 62 N. W. (2d) 842.

*Schermer & Gensler* and *Irvin E. Schermer,* for appellant.

*Bernard P. Friel, Jonathan H. Morgan,* and *Briggs & Morgan,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from a judgment entered in favor of defendant and third-party plaintiff, George J. Aumer, and from an order of the district court denying a motion of third-party defendant Arrow Insurance Company for an order amending its findings of fact and conclusions of law, or in the alternative granting a new trial.

Taking the view of the evidence most favorable to the court's findings, as we must, it appears that in November 1962 George J. Aumer owned two automobiles which he and his wife used. His son, Paul Aumer, who was then 18 years old, owned a 1957 Buick, which was registered in the name of George Aumer because Paul was a minor. When the automobile liability insurance carried on the Buick expired in November 1962, George Aumer requested one John Marchand, who was licensed as a life insurance agent but not as an agent for the sale of automobile liability insurance, to procure a single policy covering all three automobiles. Marchand had an arrangement with T. E. Umhoefer, who was a licensed automobile insurance agent, whereby Umhoefer would procure such insurance and the two would then split the commission. Marchand requested Umhoefer to procure the desired insurance for Aumer. Umhoefer was not licensed by appellant, Arrow Insurance Company, but he had an arrangement with it under which he had procured 15 or 20 policies from that company over a period of 6 or 7 years. The only licensed agent of Arrow Insurance Company in the State of Minnesota was Star Agency, Inc.

Umhoefer was not able to procure insurance covering all three of Aumer's automobiles from one company, due to the minority of the son, Paul. He procured a policy covering Aumer's two automobiles from American Union Insurance Company and was able to procure insurance on the Buick automobile owned by Paul from Arrow Insurance Company at a higher premium than was ordinarily paid. Arrow issued such policy in the name of George Aumer, dated November 29, 1962, and forwarded it to Umhoefer. The record is not clear, but the policy apparently was forwarded by Umhoefer to Marchand and by him delivered to Aumer. The application for this policy was prepared by Umhoefer and directed to Star Agency, Inc. It was never signed by Aumer. The testimony of W. L. Wooliscroft, president of Arrow Insurance Company, who was also connected with the Star Agency, was that "either the agent or the insured must sign the application." Nowhere in the record does it appear that a *broker* may sign the application. It appears only that he may certify to the signature of the applicant. On the application we find the following:

"I hereby certify to the best of my knowledge and belief that the above signature is the personal signature of the applicant.

S/ T. E. UMHOEFER
_____
(Must be signed by Agent, Broker or Solicitor)

T. E. Umhoefer Agency
_____
Agency

3114 Orchard Ave. No.                    JU 8-3242
_____
Agency Address                    Telephone number
Minneapolis 22, Minn."

In spite of the above certification, no signature of the applicant appears. It must follow from the testimony of Wooliscroft that it was signed by the *agent*, if it was signed at all.

Apparently Umhoefer paid the premium to Arrow and then billed Marchand for that amount, less Marchand's share of the commission. It is undisputed that the premium was paid by Aumer to Marchand.

Marchand maintains that he forwarded the required amount to Umhoefer, which Umhoefer denies.

Shortly after the policy was issued, Arrow discovered that Paul Aumer, who was listed on the application as principal driver of this vehicle, had been involved in a prior automobile accident which had not been listed on the application form. Thereupon Arrow sent a letter, dated December 13, 1962, to George Aumer, stating:

"Due to Paul Aumer's violation of speed on 6/12/62 there is a $9.80 increase in your premium. We have received $98.00 on your policy. If the additional $9.80 is not received in this office within the next fifteen (15) days, your policy will be cancelled and if you wished the coverage to be reinstated, it would be necessary that you complete a new application and submit it, with full premium, for another policy period."

The letter is signed by the Arrow Insurance Company and a copy was sent to Ted E. Umhoefer Agency, 3114 Orchard Avenue North, Minneapolis, Minnesota. Upon receipt of this letter Aumer called Marchand who said he would send in the additional premium to Arrow. Arrow did not receive the additional premium in time and on January 8 sent a notice of cancellation by certified mail to Aumer, advising him that his policy would be canceled as of January 20, 1963. A copy of this notice was sent to T. E. Umhoefer Agency under a provision for "Agent or Broker." Neither "Agent" nor "Broker" is stricken on the notice. The cancellation notice was received by Aumer on January 12, 1963, and he thereupon contacted Marchand, who said he would send in the additional premium to Arrow. On January 23 Arrow received $10 from Marchand to cover the additional $9.80 premium. It returned this amount to Aumer by letter dated January 24, which stated:

"Enclosed is our check No. 18996 in the amount of $10.00, which is the return of your additional premium. The cancellation date of your policy was January 20, 1963, and we received your additional premium after the cancellation was effective. We do not accept any payments after the cancellation is effective.

"If you should still wish to have your policy re-instated, you will have to submit a new application with the full premium."

The $10 check was issued by Star Agency, Inc., to George James Aumer and was signed by W. L. Wooliscroft, president of Arrow, for Star Agency, Inc.

Upon receipt of this letter and check, Aumer called Marchand and Marchand referred him to Umhoefer. Aumer told Umhoefer that he wanted the insurance policy reinstated and was informed that Umhoefer would see to it that the policy was reinstated with Arrow Insurance Company. After several subsequent attempts to reach Umhoefer, Paul Aumer did contact him on the telephone and was told that the policy had been reinstated. While the conversation and assurance are denied by Umhoefer, the court was justified in believing Paul. Paul's testimony is corroborated by Marchand, who testified that he was assured by Umhoefer that the policy had been reinstated or rewritten.

Relying upon the assurance that the policy had been reinstated, George Aumer permitted his son to drive the car, a right he had denied him while the insurance was not in force. On May 10, 1963, Paul was involved in an accident. Umhoefer, who apparently had been operating illegally, personally paid the property damage to the automobile Paul collided with out of his own pocket. When a personal injury suit was commenced the defense was submitted to Arrow Insurance Company, which denied any coverage. A third-party complaint was filed by Aumer against Arrow as third-party defendant. The court held that there was coverage and that Arrow was required to defend and was liable for legal expenses incurred by Aumer in the actions brought for failure to comply with the insurance policy provisions. It is from this determination that the case comes here. The only question involved is whether under these circumstances there was insurance in effect requiring Arrow to defend Aumer in the personal injury action. Essentially it is Arrow's contention that Umhoefer was acting as a broker and not as an agent; that as such he was the agent of the insured and not that of the insurer and as a consequence had no authority to reinstate the policy verbally.

■ While we recognize the distinction between "broker" and "agent" in the field of insurance law, there is no magic formula in words, and whether one status or another exists is a question of fact. Fredman v. Consolidated Fire & Marine Ins. Co. 104 Minn. 76, 116 N. W. 221. In

Green v. Minnesota Farmers Mutual Ins. Co. 190 Minn. 109, 114, 251 N. W. 14, 16, we quote with approval the following from Vance, Insurance (2 ed.) § 118, p. 415:

"In the nature of things it is impossible that the powers of any agent can be fixed by his title. The possession of authority, whether actual or apparent, is a question of fact, not of words. * * * The question whether any given act of an agent binds his principal is to be decided by determining whether the third party had reasonable grounds for believing, under all the facts of the case, that the principal had authorized that act. If such reasonable ground does exist, the principal is bound, whether the agent has been entitled 'general agent,' 'solicitor,' or 'president.'"

In Kilborn v. Prudential Ins. Co. 99 Minn. 176, 182, 108 N. W. 861, 864, we said:

"The designation of agents as 'general,' 'special,' 'local,' and 'soliciting' agents in a rough way serves to indicate their powers, but it is of little importance as between the principal and persons who deal with the agent."

As long ago as Kausal v. Minnesota Farmers Mutual Fire Ins. Assn. (1883) 31 Minn. 17, 20, 16 N. W. 430, Mr. Justice Mitchell, speaking for the court, with his usual foresight said:

"On principle, as well as for considerations of public policy, agents of insurance companies, authorized to procure applications for insurance, and to forward them to the companies for acceptance, must be deemed the agents of the insurers and not of the insured in all that they do in preparing the application, or in any representations they may make to the insured as to the character or effect of the statements therein contained. This rule is rendered necessary by the manner in which business is now usually done by the insurers. They supply these agents with printed blanks, stimulate them by the promise of liberal commissions, and then send them abroad in the community to solicit insurance. The companies employ them for that purpose, and the public regard them as the agents of the companies in the matter of preparing and filling up the applications,—a fact which the companies perfectly understand. The parties who

are induced by these agents to make applications for insurance rarely know anything about the general officers of the company, or its constitution and by-laws, but look to the agent as its full and complete representative in all that is said or done in regard to the application. And in view of the apparent authority with which the companies clothe these solicitors, they have a perfect right to consider them such. Hence, where an agent to procure and forward applications for insurance, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are correctly stated to him by the applicant, the error is chargeable to the insurer and not to the insured. [Citations omitted.]

"After the courts had generally established this doctrine, many of the insurance companies, in order to obviate it, adopted the ingenious device of inserting a provision in the policy that the application, by whomsoever made, whether by the agent of the company or any other person, shall be deemed the act of the insured and not of the insurer. But, as has been well remarked by another court, 'there is no magic in mere words to change the real into the unreal. A device of words cannot be imposed upon a court in place of an actuality of facts.' If corporations are astute in contriving such provisions, courts will take care that they shall not be used as instruments of fraud or injustice."

These words are even more true today than when Mr. Justice Mitchell spoke them; and they apply as well to designating as broker rather than agent one who solicits or accepts applications which result in the issuance of policies by the insurer. Automobile insurance today has become a necessity which every sensible owner or driver of a motor vehicle procures to protect himself from liability for injuries or property damage occasioned by accidents on the highways. Companies selling this type of insurance select those with whom the public is expected to deal in making application for insurance. They clothe them with all the indicia of authority to act for the company. When liability occurs they should not be permitted to escape the obligation for which they were paid by the simple ruse of claiming the one who procured the application was a broker instead of an agent. In the field of fire insurance, Minn. St. 65.05 contains the following:

"* * * Every person who solicits insurance and procures an application therefor shall be held to be the agent of the party afterward issuing insurance thereon or a renewal thereof."

The same ought to be true in the field of automobile insurance;[1] and in the absence of a statute, if the insurer is to be relieved of liability because the one who procured and forwarded to it an application for insurance was a broker and not an agent of the insurer, it ought to be required to bring this information clearly home to the one who applies for the insurance.

■ Whether Umhoefer in this case was a licensed agent of Arrow or a subagent of Star Agency, Inc., would make no difference. Subagents may bind the company within their actual, apparent, or implied authority as fully as a licensed agent of the company. Rommel v. New Brunswick Fire Ins. Co. 214 Minn. 251, 8 N. W. (2d) 28.

■ Once it is established that one who purports to represent an insurance company is its agent, a parol contract will bind the company if it is within the actual, implied, or apparent authority of the agent. An insurance agent's powers are prima facie coextensive with the business entrusted to his care and will not be narrowed by limitations not communicated to those with whom he deals. Koivisto v. Bankers & Merchants Fire Ins. Co. 148 Minn. 255, 259, 181 N. W. 580, 582, where we said, with respect to an oral agreement fixing the effective date of a policy:

"* * * The contract Mattson made with plaintiff was directly connected with and essential to the transaction of the business in hand. It served substantially the same purpose as a binding slip."

■ It is difficult to formulate any all-inclusive rule for determining whether one who takes an application for an insurance policy is a broker or an agent. The following criteria, found in 29 Am. Jur., Insurance, § 139, although not exclusive, may be of some help:

"* * * Under certain circumstances and for certain purposes, an insurance broker may represent either the insured or the insurer, or both.

---

[1] See, Universal Underwriters Ins. Co. v. Kowalczyk (8 Cir.) 216 F. (2d) 120.

The question is one of fact to be determined from the evidence. Such circumstances may be arrived at by the following inquiries: (1) Was the broker at the time of effecting the insurance actually or ostensibly connected with the insurer and employed by it, or was he acting independently of any employment by the company? (2) From whom did the broker's express or implied authority to do the act in question originally proceed? (3) Was the act one which the broker was expressly authorized to do, or was it a usual and necessary means to accomplish the execution of the authority conferred? (4) Was the act done independently of the original employment, and if so, for whom, or at whose instance? (5) Which party could the broker hold directly responsible for his remuneration at the time the act in question was done? (6) Was there any limitation on the broker's ostensible authority, of which the person dealing with him was, or ought to have been, cognizant? (7) Was there any ratification by the ostensible principal of the claimed authorized act?"

While the case of Johnson v. Ostenso, 250 Minn. 213, 84 N. W. (2d) 269, is relied upon by respondent, there are some distinguishing features in that case from that now before us. We held there that one who was taking applications for liability insurance and had the indicia of authority could bind the company with respect to the effective date of an insurance policy. In that case the application blanks had the name of the purported agent on them as the company's agent. While we do not find that here, every communication from the company to the policyholder contained a reference to the Umhoefer Insurance Agency and Umhoefer was sent copies and kept completely informed as to all transactions. There is some similarity in the two cases in that respect.

Appellant relies mainly on three cases, namely, Gude v. Exchange Fire Ins. Co. 53 Minn. 220, 54 N. W. 1117; Fredman v. Consolidated Fire & Marine Ins. Co. 104 Minn. 76, 116 N. W. 221; and Travelers Ind. Co. v. National Ind. Co. (8 Cir.) 292 F. (2d) 214. All of these cases are distinguishable from that now before us. In Gude the decision clearly emphasizes the fact that there was no connection between the defendant company and the alleged broker. That is not true here. In this case Umhoefer had many direct dealings with the defendant company and his name appeared on all of the communications between the com-

pany and the insured. In Fredman we pointed out that the insured could not under the facts in that case have understood the alleged agent to be the representative of the insurer. In Travelers the same is true, that there was nothing in the evidence that could or should have led the insured to believe the broker involved was the agent of the insurer.

■ Here every indication and all information received by Aumer was that Umhoefer was Arrow's agent. The evidence shows that Umhoefer received his compensation in the form of a commission from Arrow. Aumer paid nothing except the required premium. Every letter, notice, or memorandum received by Aumer from Arrow indicated that a copy was sent to T. E. Umhoefer Agency. Not once does it appear that Arrow considered Umhoefer the representative of the insured. The net premium which Aumer paid to Arrow was returned to Umhoefer in the form of a credit, and both net premium and commission were retained by him and never returned to Aumer. Had the full premium been returned to Aumer when the alleged cancellation took place, he would undoubtedly have known that his insurance was terminated. Furthermore, the policy application was never signed by Aumer. While the testimony of Wooliscroft was that the application must be signed by either the applicant or his agent, all that appears here is that Umhoefer certified that the applicant's signature (missing from the application) was genuine. Application blanks were furnished to Umhoefer by Arrow, or by Star Agency, Inc., which was, for all that appears from the record, an integral part of Arrow Insurance Company.

Under all of these circumstances it seems obvious that the evidence more than amply sustains the finding of the trial court that Umhoefer was the agent of Arrow and that an oral representation that the policy had been reinstated was effective to bind the company.

■ The only other question remaining is whether it was proper for the court to permit plaintiff to recover his legal fees incurred in the declaratory judgment action, although the general rule is that legal fees are ordinarily not recoverable unless there is statutory authority for it. Dworsky v. Vermes Credit Jewelry, Inc. 244 Minn. 62, 69 N. W. (2d) 118; Smith v. Chaffee, 181 Minn. 322, 232 N. W. 515; Stickney v. Goward, 161 Minn. 457, 201 N. W. 630, 39 A. L. R. 1216.

However, this action is in the nature of an action to recover damages for breach of contract. Legal fees incurred in the declaratory judgment action were damages arising directly as the result of the breach. We think that the injured party in an action of this kind ought to be permitted to recover whatever expenses he has been compelled to incur in asserting his rights, as a direct loss incident to the breach of contract. See, 7A Appleman, Insurance Law and Practice, § 4691.

Affirmed.