445 N.W.2d 824 (1989)
ECONOMY FIRE & CASUALTY COMPANY, Petitioner, Appellant,
v.
Richard V. IVERSON, Orville M. Olson, et al., Respondents.
No. C1-87-2234.
Supreme Court of Minnesota.
September 22, 1989.
*825 Kay Nord Hunt, Phillip A. Cole, Caryn F. Brenner, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for appellant.
Thomas J. Hunziker, Minneapolis, for respondent Iverson.
Joseph Lyons-Leoni, Minneapolis, for respondent Olson.
Heard, considered and decided by the court en banc.
WAHL, Justice.
Economy Fire & Casualty Company (Economy), having brought this declaratory judgment action, appeals a judgment determining that, under the terms of a homeowner's insurance policy, it was required to provide a defense for its insured, Richard Iverson, in a tort suit brought by Orville Olson. The trial court concluded that the policy provision which excluded acts "expected or intended by the insured" did not exclude coverage for deliberate acts taken in lawful defense of person or property but did not decide the indemnity issue. The court of appeals affirmed. Economy Fire & Casualty Co. v. Iverson, 426 N.W.2d 195 (Minn.App.1988). We find that Economy is required to provide a defense under its contract of insurance and accepted principles of insurance law, but has no obligation to indemnify because the jury finding of self-defense extinguishes liability on the part of the insured. Accordingly, we affirm in part and reverse in part.
The tort suit underlying this action arose from a May 24, 1985 shooting incident at Iverson's home, where several of Iverson's friends had gathered that evening for drinks after work. Olson arrived as the uninvited guest of a mutual friend and did not know Iverson. Olson was intoxicated and argumentative and attempted to free Iverson's pet cougar and bobcat from their cages, so that he could fight them. Iverson prevented the cats' release. Olson tried to buy the animals so he could kill them. When told to leave the cats alone, Olson threatened to kill everyone present. Iverson ordered Olson to leave and struck him. The two scuffled and Olson was ejected. As he left, Olson threatened to return and kill Iverson.
Olson did return to Iverson's house approximately two hours later in the evening and approached the side door. Iverson was speaking on the phone with his father when he saw Olson approach. At his father's suggestion, Iverson retrieved two guns from the upper floor, eventually discarding one and approaching the door with a loaded .22 semi-automatic rifle. Olson claims, as he knocked on the side door, Iverson opened the door and shot him. Iverson claims Olson pushed open the door, entered the house and grabbed the gun, which went off in the struggle. Olson fell outside the door, but managed to return to his car and drove home. Olson was hospitalized that night and the bullet was removed. Four hours after the shooting, Olson's blood alcohol level was .23.
Olson and his wife commenced a tort action against Iverson on June 17, 1985, alleging negligence, intentional assault (battery) and loss of consortium. Iverson tendered defense of the action to his insurance company, Economy, in accordance with the terms of his $100,000 homeowner's policy. Economy retained an attorney to represent Iverson under a reservation of rights. The attorney filed an answer to the Olson complaint affirmatively alleging, inter alia, self-defense.
Economy initiated this declaratory judgment action November 11, 1985, alleging that it had no obligation to defend or indemnify Iverson because the damages were not caused by an "occurrence" and, in any event, were excluded under the insurance contract as actions "intended or expected *826 by the insured." Economy asked to be released from any duty to defend or indemnify Iverson in the underlying tort suit. Trial on the declaratory judgment action began June 1, 1987. While the jury was deliberating, Iverson and Olson entered a settlement agreement, in the tort suit, of the type recognized in Miller v. Shugart, 316 N.W.2d 729 (Minn.1982). In that agreement, Iverson admitted to negligence resulting in damages to the Olsons in the sum of $250,000 and the Olsons agreed to limit their recovery to the proceeds of Iverson's homeowner's insurance policy.
On June 4, 1987, the jury in the declaratory judgment action returned a special verdict form containing two questions.
1. Did Richard Iverson expect or intend to cause bodily injury to Orville Olson in connection with the discharge of the weapon on May 24, 1985?
Answer: Yes.
2. Did Richard Iverson injure Orville Olson in the course of the lawful defense of his person or property?
Answer: Yes.
On the basis of this verdict and the court of appeals decision in Western Fire Ins. Co. v. Persons, 393 N.W.2d 234 (Minn.App. 1986), the trial court ordered Economy to provide Iverson with a defense in the (now settled) tort action, but made no finding regarding the duty to indemnify. Economy's post-trial motions to amend the order or for judgment notwithstanding the verdict were denied. The court of appeals affirmed.
We are asked to determine whether Economy is required by the insurance policy in question to defend and indemnify Iverson in this case.
The policy provides in relevant part:
Coverage E  Personal Liability
If a claim is made or a suit is filed against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will
1. pay up to our limit of liability for the damages for which the insured is legally liable; and
2. provide a defense at our expense by counsel of our choice, even if allegations are groundless, false or fraudulent * * * *
An "occurrence" is defined in the policy as "an accident including exposure to conditions, which results, during the policy period, in: a) bodily injury, or b) property damage." The policy establishes that personal liability coverage under Coverage E does not apply to bodily injury or property damage "which is expected or intended by the insured."
Economy urges this court to reverse the lower court's finding of the duty to defend, arguing that requiring a defense forces the insurer to await the possible assertion of an affirmative defense before establishing its obligations under the insurance contract. Not so.
The duty to provide a defense is based on the allegations contained in the plaintiff's complaint. An insurer must defend where any part of the claim is arguably within the scope of policy coverage. Brown v. State Auto & Cas. Underwriters, 293 N.W.2d 822, 825-26 (Minn.1980). This is a broader duty than the duty to indemnify, and this court has held an insurer should provide the defense while reserving its right to contest coverage based on facts developed at trial. Id. In this instance, Olson's complaint alleged one count of negligence, which, if proven, would, even under Economy's interpretation of the policy, constitute an "occurrence" and would fall within the scope of Iverson's policy coverage. "Where the allegations of a complaint state a cause of action within the terms of policy coverage, the insurance company must undertake to defend the insured." Republic Vanguard Ins. Co. v. Buehl, 295 Minn. 327, 332-33, 204 N.W.2d 426, 429 (Minn.1973) (citing Christian v. Royal Ins. Co., 185 Minn. 180, 240 N.W. 365 (1932)) (footnote omitted). Economy is not faced with a situation in which the insurer becomes obligated to defend based on an affirmative defense. Rather, Economy seeks to be excused from its obligation to defend based on the affirmative defense.[1] *827 This we decline to allow. We hold that the insurer, Economy, owes a duty under its contract of insurance to defend its insured in the underlying tort action based solely on the allegations of the plaintiff's complaint which fall within the scope of the policy coverage. Accordingly, Economy must pay the legal costs incurred by Iverson up to the time the tort suit was settled. Economy must also pay its insured's legal costs in enforcing the contract obligation of defense in this declaratory judgment action. Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966). Morrison stands for the proposition that, "where an insurance contract is intended to relieve the insured of the financial burden of litigation, the insured will not be required to pay the litigation costs of forcing the insurer to assume that burden." Lanoue v. Fireman's Fund Am. Ins. Cos., 278 N.W.2d 49, 55 (Minn.1979).
The duty to defend is not dispositive, of course, of whether a duty exists to indemnify. Economy argues that the jury found an intent by Iverson to injure which makes the shooting an intentional act excluded from coverage and absolves Economy of the duty to indemnify. This argument is complicated by the settlement agreement in which Iverson admitted negligence, as well as by the trial court's silence on the issue of indemnity. The court of appeals concluded that the finding of self-defense collaterally estopped any party to the declaratory judgment action from challenging that issue, but suggested that the issue of negligent use of too much force might be tried in a subsequent tort action. Both Iverson and Olson argue that the question of indemnity is premature, and therefore not properly before this court, because no garnishment action has begun.
It is, of course, correct that no garnishment action has been filed to enforce the judgment entered on the Miller-Schugart agreement. Nevertheless, the question of indemnity has been raised, and can and should be disposed of here. The jury in the declaratory judgment action found that Iverson's actions were taken in the lawful defense of self or property.[2] The verdict conclusively determines that Iverson's shooting of Olson in self-defense was not an act which gave rise to liability. This verdict is binding on Olson, because the declaratory judgment action brought by Economy named both Iverson and Olson as defendants and determined Economy's liability to both parties. It would be an exercise in futility and wasteful besides to require Olson to bring what must ultimately be an unsuccessful garnishment action. Olson has already had his claim against Economy adjudicated and no liability lies.
The fact that the coverage issue has been raised does not oblige us to reach that issue and determine whether self-defense is an exception to the intentional acts exclusion. Judicial discretion indicates that we should not decide any issue not necessary for the disposition of a case. The matter of coverage is such an issue in this case.[3] The question of whether self-defense is an exception to the intentional acts exclusion is moot. We hold that under these circumstances, the insurer has no obligation to indemnify because the jury finding of self-defense extinguished liability on the part of the insured.
Affirmed in part; reversed in part.
*828 SIMONETT, Justice (dissenting in part).
I view this case somewhat differently. I would reach the coverage issue, and therefore I respectfully dissent in part.

I.
The jury had to decide if Iverson shot Olson negligently or intentionally.[1] It found that Iverson shot Olson intentionally  i.e., he expected or intended to cause bodily injury to Olson  but that he did so "in the course of the lawful defense of his person or property." The court of appeals, nevertheless, thought there still remained an issue "of negligent use of too much force." Economy Fire & Cas. Co. v. Iverson, 426 N.W.2d 195, 200 n. 2 (Minn.App. 1988). But as the majority opinion points out, by finding that Iverson had used reasonable force the jury necessarily found that he had not used "too much" force.
In most self-defense cases, the amount of force used, it seems to me, has nothing to do with negligence. "There is, properly speaking, no such thing as a negligent assault." W. Prosser, Torts § 10, at 41 (4th ed. 1971). If Iverson had used "too much" force, he would not have been negligent; rather, he would have been liable to Olson for an assault and battery. See Shulze v. Kleeber, 10 Wis.2d 540, 545, 103 N.W.2d 560, 564 (1960). A person defending his or her life or property is privileged to use force, provided it is reasonable. See J.I.G. No. 506. Perhaps Iverson could have shot his assaulter in a less vital spot or should have retreated rather than have shot at all. But whatever the case, the force used by Iverson was used intentionally to injure Olson, and the reasonableness of that force bears on whether or not the battery was privileged, not whether it was negligent.

II.
The jury found Iverson's assault was privileged. The majority opinion holds that this finding "extinguishes," by way of collateral estoppel, any tort liability of Iverson to Olson; and therefore the issue of policy coverage is moot.
The difficulty with this approach, it seems to me, is that there is no pending tort action in which to assert collateral estoppel. The tort action was settled. The trouble here is that the belated, so-called Miller-Shugart settlement has skewed the issue in the declaratory judgment action.
The parties had sought a declaration whether Iverson's shooting was intentional and therefore barred by the intentional act exclusion. Before that determination could be made  at the very last minute  Iverson stipulated the shooting was negligent and settled the tort action. Thus it would seem that the only issue remaining is whether the settlement agreement is enforceable against Economy, i.e., whether it was reasonable and prudent for Iverson to settle for $250,000, in compromise of a (then) doubtful negligence liability claim. Olson did not settle on the basis that Iverson was liable for an intentional assault; therefore, that issue, apparently, has become irrelevant. This, however, cannot be. If the tort action had been tried first, a verdict of negligence would have been binding on Economy; Iverson, by unilaterally settling the tort action, surely cannot impose coverage for the settlement liability on Economy without affording Economy an opportunity to prove the shooting was not negligent, but intentional.
The problem here is that the parties have assumed their settlement was a Miller-Shugart settlement. It is not. This is not a case where the insurer denied all coverage regardless of how the disputed liability issue might be resolved. Here both coverage and liability depended on the same factual determination, i.e., whether the insured's conduct was negligent or intentional; the insurer agreed there was coverage if the conduct was negligent but reserved the right to assert the intentional act exclusion if the factfinder should find the conduct was intentional. By depriving his insurer *829 of its right to have that factual determination made, the insured violated the cooperation clause in his policy. In short, the settlement stipulation and the judgment entered thereon are, as a matter of law, unenforceable against Economy. Sargent v. Johnson, 551 F.2d 221 (8th Cir. 1977).
The court of appeals recently came to the same conclusion in Steen v. Those Underwriters at Lloyds, 442 N.W.2d 158 (Minn. App.1989), pet. for rev. denied, Aug. 15, 1989. There, too, the insurer afforded a defense for negligence but reserved the right to deny coverage if the insured's conduct was found to be intentional. The insured entered into a so-called Miller-Shugart settlement on an admission of negligence. The plaintiff then sued the insurer to recover on the settlement. The court of appeals held the settlement was unenforceable against the insurer because it violated the insured's contractual obligation to cooperate with its insurer.
Miller v. Shugart, 316 N.W.2d 729 (Minn.1982), allowed a relaxation of the insured's duty to cooperate in a very limited situation, and the rationale of Miller-Shugart should not be extended beyond those limits. See also Buysse v. Baumann-Furrie & Co., 445 N.W.2d 814 (Minn.1989), decided today. As Judge Huspeni pointed out in Steen, in Shugart the insurer had denied any coverage, and its denial was based not on whether the defendant driver was negligent but on an entirely different factual issue, namely, whether the defendant driver was an agent of the owner and therefore an insured under the policy. We permitted the defendant driver to settle with the plaintiff to escape personal liability, but added, "[o]f course, the insurer escapes the risk if it should be successful on the coverage issue." Id. at 734.[2]
In this case the so-called Miller-Shugart settlement was made part of the record on appeal. It is enough in this declaratory judgment action to enter judgment declaring: (1) the liability for which coverage is sought is based on a settlement stipulation which, as a matter of law, is unenforceable against Economy; and (2) the finding that Iverson's shooting of Olson was privileged as self-defense is binding on Olson in any other proceeding wherein Olson might assert tort liability against Iverson. In effect, this ends the litigation.
I would nevertheless answer the question the parties have briefed and urged us to answer, namely, is there coverage for an assault committed in self-defense? I would do so for two reasons. First of all, the court of appeals in Western Fire Ins. Co. v. Persons, 393 N.W.2d 234 (Minn.App.1986), has held there is coverage for a self-defense assault, and this issue bears on matters raised in Part IV hereof (duty to defend, attorney fees, and order of trial in assault-type cases). Secondly, except in a case alleging solely an issue of pure self-defense (an exceedingly rare case), it is almost impossible, as this case illustrates, to reach the coverage issue. We should, therefore, reach it now and clear up the confusion.

III.
If an insured in self-defense intentionally injures the person threatening his life or property, and does so expecting or intending to cause bodily injury to that person, does the intentional act exclusion apply to bar insurance coverage for the injury? The answer, I believe, is obviously yes. There is no coverage.
The fact that the insured acts in self-defense may bear on the insured's motive in assaulting the plaintiff, but under the intentional act exclusion it is the insured's *830 intent, not his motive, that is relevant. The fact that the insured may devoutly wish he did not have to shoot his assaulter does not change the fact that he does so intentionally. Shooting plaintiff with the intent to shoot and injure him comes within the plain wording of the intentional act exclusion. We cannot rewrite the exclusion. Moreover, there is nothing gained by ignoring the plain meaning of the exclusion: As this case illustrates, if the assault is privileged as self-defense, there is no liability; if the assault is not privileged, the intentional act exclusion precludes coverage for the unprivileged assault. Finally, to require an insurer to indemnify for self-defense assaults would be bad policy. It would be an invitation for parties to raise self-defense as an issue in almost every altercation accompanied by the inevitable temptation of the participants to accommodate their version of the brawl to favor coverage for the injured party.
There is much needless confusion on whether a self-defense assault is barred by the intentional act exclusion. See the split of authorities in Annotation, 34 A.L.R. 4th 761 (1984). Cases from other jurisdictions which have indicated there is coverage for self-defense assaults have done so by equating a self-defense assault with a negligent assault. See, e.g., Allstate Ins. Co. v. Novak, 210 Neb. 184, 313 N.W.2d 636 (1981).
We should make clear the narrow scope of the coverage question in this case. We are not dealing with negligent conduct. We are not dealing with intentional conduct where there is no intent or expectation to injure. Nor are we dealing with the kind of assaultive behavior which is no more than "an instinctive reflex or a sudden impulsive defensive reaction to a provocative situation." American Family Mut. Ins. v. Peterson, 405 N.W.2d 418, 421 (Minn.1987). None of these cases is really a "self-defense case" and that characterization only confuses the issue.[3]
This is a case, rather, where the insured, in self-defense, intentionally assaults the person threatening his life or property, with the intent to cause bodily harm to that person. The jury so found. The question is whether this assault, regardless whether the force used is reasonable or excessive, comes within the intentional act exclusion. I would hold that it does. I agree whether a self-defense assault which injures an innocent bystander comes within the exclusion is an open question, although it might not be accurate to characterize this situation as a true "self-defense" case. If an insured acts negligently, there is insurance coverage because he is negligent, not because he was acting in self-defense when he acted negligently.

IV.
This leaves a remaining issue: Did the trial court err in awarding attorney fees to Iverson's attorney for defending Iverson in this declaratory judgment action? The majority opinion would allow fees up to the time the Miller-Shugart settlement was made, i.e., up to the time of the verdict.
Economy has always agreed it owes Iverson a defense in the tort action because of the negligence count, but it argues it should not have to pay Iverson's attorney fees in this declaratory judgment action because Iverson has been unsuccessful in establishing insurance coverage.[4] Nevertheless, I would allow attorney fees here.
I would hold that where the factfinder's determination in a declaratory judgment *831 action brought to decide coverage necessarily and effectively resolves the issues of underlying tort liability, the insurer should pay the insured's attorney fees in the declaratory judgment action. The insurer should pay because it would have paid Iverson's attorney fees if the tort action which involved the same dispositive fact issue had been tried first; it should pay because it is satisfying its duty to defend on the negligence count in the tort action by litigating that count in the declaratory judgment action.
Whether Olson's tort action or Economy's declaratory judgment action was tried first, the trier of fact would decide whether Iverson's shooting of Olson was negligent (for which there would be liability and admitted coverage), or whether his conduct was an intentional assault (for which there would be liability and no coverage unless the assault was without intent to injure), or whether his assault was privileged as self-defense (in which event there would be no liability). Because the court of appeals in Western Fire Ins. Co. v. Persons, supra, had held that a self-defense assault was covered, the parties in this case undoubtedly felt they had to try the declaratory judgment action first.
I agree Economy need not pay for Iverson's attorney fees after the verdict in this case when, by that time, Iverson had settled. Economy is not required to finance its insured's efforts in this appeal to help Olson collect against Economy.
KELLEY, Justice (dissenting in part).
I join the dissent of Justice Simonett.
COYNE, Justice (dissenting in part).
I join the dissent of Justice Simonett.
NOTES
[1] Whether the assertion of an affirmative defense could create an obligation to defend where one would not otherwise exist is at best speculative. That is not this case, and this opinion does not decide that issue.
[2] Prior to deliberations, the judge instructed the jury consistently with Minn.Stat. § 609.06 and JIG 506 that a person has a right to use reasonable force in self defense. The jury verdict of self-defense, therefore, necessarily encompasses a finding that the degree of force used was reasonable, providing no basis for a subsequent determination of "negligent use of too much force." Economy, 426 N.W.2d at 200, n. 2.
[3] We can conceive of some future case involving a claim of self-defense, in which the injured party seeking compensation was not the attacker, as Olson was in this case, but was instead an innocent third-party. Whether such a bystander injured in the course of lawful defense of self or property would be excluded from recovering from a homeowner's policy is a question which would be affected by our overreaching to decide the question of indemnity here.
[1] At trial Iverson testified that he did not intend to shoot Olson; that he only pointed the gun at Olson and Olson grabbed the barrel; that there was a struggle, and the gun accidentally went off. Perhaps this version of events might support a finding of negligence, but the jury, apparently believing this scenario was influenced by Iverson's self-interest, did not believe it.
[2] Compare, for example, Hennings v. State Farm Fire & Cas. Co., 438 N.W.2d 680 (Minn.App. 1989). There the insured was exposed to liability for a boating accident, and the insurer denied coverage on the entirely separate grounds that the business pursuits and watercraft exclusions of its policy applied. The insured then properly entered into a Miller-Shugart settlement with the plaintiff. In a subsequent action by plaintiff against the insurer, it was determined that the policy exclusions did not apply, but, further, that the amount of the settlement was unreasonable. The court of appeals reopened the tort action on the issue of what would be a reasonable settlement.
[3] In Farmers Ins. Exchange v. Sipple, 255 N.W.2d 373, 377 (Minn.1977), we said that where an insured "acted instinctively in the form of a reflex," the jury could find, as it did, that the insured did not expect to or intend to injure the claimant. We also commented in passing that the insurer's counsel, during his oral argument, had admitted that if the insured had acted in self-defense, the intentional act exclusion would be inapplicable. We did not, however, adopt this admission of counsel nor analyze it, nor was there any need to do so as the case did not involve self-defense.
[4] We have denied attorney fees to an insured who is unsuccessful in a declaratory judgment action in establishing coverage. See Continental Western Ins. Co. v. Toal, 309 Minn. 169, 244 N.W.2d 121 (1976); State Farm Fire & Cas. Co. v. Williams, 355 N.W.2d 421 (Minn.1984); American Family Mut. Ins. v. Peterson, 405 N.W.2d 418 (Minn.1987). On the other hand, we allow attorney fees where the insured is successful in establishing coverage. Morrison v. Swenson, 274 Minn. 127, 142 N.W.2d 640 (1966); Lanoue v. Fireman's Fund, 278 N.W.2d 49 (Minn.1979); Brown v. State Auto, 293 N.W.2d 822 (Minn.1980). The rationale is that if there is coverage there is a duty of the insurer to defend and relieve the insured of the financial burden of the litigation, and, therefore, the insurer's failure to pay the insured's attorney fees is a breach of contract. Cf. Security Mut. Cas. Co. v. Luthi, 303 Minn. 161, 226 N.W.2d 878 (1975) (policy provided for insured's reimbursement). See also Grain Dealers Mut. Ins. Co. v. Cady, 318 N.W.2d 247, 251 n. 10 (Minn.1982).