Steven FRANK, Plaintiff,

v.

Orville WINTER, et al., Defendants and
Third–Party Plaintiffs, Appellants,

v.

AUSTIN MUTUAL INSURANCE
COMPANY, Third–Party
Defendant, Respondent.

No. C9–94–1755.

Court of Appeals of Minnesota.

March 7, 1995.

Review Denied April 27, 1995.

Steven Zabel, Frederick W. Morris, Leonard, Street & Deinard, Minneapolis, for plaintiff.

Clarance E. Hagglund, Britton D. Weimer, Hagglund & Weimer, Minneapolis, for appellants.

Dale O. Thornsjo, Lisa M. Wiencke, Peterson & Hektner, Ltd., Minneapolis, for respondent.

Considered and decided by RANDALL, P.J., and CRIPPEN and MULALLY,* JJ.

## OPINION

RANDALL, Judge.

Orville Winter and Winter Insurance Agency (Winter) appeal from the grant of summary judgment and dismissal of indemnity, contribution, and defense claims against respondent Austin Mutual Insurance Company (Austin). Austin also appeals the trial court's failure to grant attorneys fees below, and has moved to strike a portion of Winter's brief and to dismiss the appeal. We affirm.

## FACTS

Orville Winter is an independent insurance agent who sells policies from several companies including respondent Austin Mutual Insurance Company. Winter sold and serviced Steven Frank's automobile liability insurance for approximately 10 years.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

In 1990, an automobile owned by Frank was involved in an accident, and Frank discovered that his $100,000 policy limit was insufficient to cover his liability. Frank then sued Winter and his agency for negligently failing to sell or advise him to buy increased liability coverage. Winter concedes Frank never asked about additional insurance coverage. Winter admits he never volunteered to Frank he could have called the home office to request additional insurance coverage. Winter also concedes that he never called Austin's home office on his own for Frank.

Winter brought a third-party indemnity, contribution, and request for defense action against Austin, claiming that he was Austin's agent and acted with express and implied authority when dealing with Frank. The record does not show why Winter sought defense and indemnification from Austin, rather than his own errors and omissions carrier. The record does not show even if he had such coverage at the time of Frank's claim. The record also does not indicate whether there have been any side agreements between Winter and his errors and omissions carrier.

Winter and Austin's relationship was governed by a contract or "Agency Agreement" between the parties. The agreement permitted Winter to "receive and accept proposals for insurance" subject to the terms and conditions of the agreement. The agreement provided that Austin granted Winter the authority

> to receive and accept proposals for such contracts of insurance covering property and persons in Hector and vicinity * * * subject, however, * * * to the terms and conditions hereinafter set forth.
>
> (1) that Winter has full power and authority to receive and accept proposals for insurance covering such classes of risk as [Austin] may, from time to time, authorize to be insured * * *
>
> (2) [Winter] may issue binders for the kinds of insurance and within the limits set forth under the binding authority limits in the Agents Manual and made part hereof by reference. [Winter] shall not bind cov-

erage on any type of risk shown in the Company's prohibited and submission lists.

\*      \*      \*      \*      \*      \*

> (6) Nothing contained herein shall be construed to create the relationship of employer and employee between the Company and [Winter]. [Winter] shall be free to exercise his own judgment as to the persons from whom he will solicit Insurance and the time and place of solicitation.

The Agent's Manual established the following limits on Winter's ability to bind coverage:

> You may bind coverage, subject to the ineligible risk characteristics found in this section and the eligibility section of the General Rules, up to the limits shown below. *If higher authorizations are required, contact the home office.*
>
> | Bodily Injury | $100/300,000 |
> | Property Damage | $50,000 |
> | Medical Payments | $5,000 |

(Emphasis added.)

Austin argued that it was entitled to summary judgment on three grounds: (1) Winter was not Austin's agent with respect to the allegations asserted in Frank's lawsuit; (2) Winter did not act within the authority granted by the agency agreement between Austin and Winter when counseling Frank; and (3) even if Winter had requested higher policy limits for Frank, Austin would not have approved the request because of Frank's loss history.

The trial court granted Austin's motion for summary judgment, and stated that "the first issue, the existence of an agency, is dispositive." The court did not reach the other grounds for summary judgment.

It is important to note that Winter did not address the agency issue that the trial court found dispositive in his statement of the case or his brief. Austin submitted a statement of the case that identified the agency relationship as an issue on appeal *but* Austin did not brief the issue. Because Winter first addressed the agency issue in the last pages of his reply brief, Austin moved to strike that portion of the reply brief. Austin reasoned that after the brief is stricken, this court should dismiss the appeal because Winter

would have failed to challenge the legal basis for the trial court's grant of summary judgment.

## ISSUES

I. Does this court have jurisdiction over this appeal?

II. Did the trial court err by concluding that Austin was entitled to summary judgment?

III. Is Austin entitled to attorney fees under Minn.Stat. § 549.21 and Rule 11?

## ANALYSIS

### I.

■ We first address Austin's motion to strike a portion of the reply brief and dismiss this appeal because Winter failed to timely address the one issue the trial court found dispositive.

■ The purpose of a reply brief is to respond to new arguments contained in the respondent's brief. Minn.R.Civ.App. P. 128.02, subd. 3; *Reserve Life Ins. v. Comm'r of Commerce*, 402 N.W.2d 631, 634 (Minn. App.1987), *pet. for rev. denied* (Minn. May 20, 1987); *Albert Lea Ice & Fuel v. United States Fire Ins.*, 239 Minn. 198, 205, 58 N.W.2d 614, 619 (1953); 3 Eric J. Magnuson, et al., *Minnesota Practice* § 128.7 (1985 & Supp.1994).

■ Generally, a party's failure to address an argument in its brief results in waiver of that argument. *Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn.1983). If an issue has not been addressed in a party's principal brief, the issue cannot be revived by raising it in a reply brief. *McIntire v. State*, 458 N.W.2d 714, 717 n. 2 (Minn.App.1990), *pet. for rev. denied* (Minn. Sept. 28, 1990) *cert. denied*, 498 U.S. 1090, 111 S.Ct. 970, 112 L.Ed.2d 1056 (1991); *Gummow v. Gummow*, 356 N.W.2d 426, 428 (Minn.App.1984). This court, however, may reach issues not ordinarily considered properly raised. *See Bald-*

*er v. Haley*, 399 N.W.2d 77, 80 (Minn.1987); Minn.R.Civ.App. P. 103.04.

Here, the trial court specifically stated that it granted summary judgment on the lack of an agency relationship between Winter and Austin. Austin now argues that section IV of the reply brief must be stricken because the section improperly addresses new matters, and because it is prejudiced by its inability to fully brief the agency issue.

We agree that Winter improperly raised the dispositive issue in his reply brief in violation of Minn.R.Civ.App. P. 128.02, subd. 3, and that Austin may have been prejudiced by its inability to fully brief the issue.[2] But, we choose to address the merits of Winter's appeal in the interests of ending this litigation. *See Balder*, 399 N.W.2d at 80; Minn. R.Civ.App. P. 103.04.

### II.

■ On appeal from summary judgment, this court determines whether there are any genuine issues of material fact and whether the lower court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). A "material fact is one of such a nature as will affect the result or outcome of the case depending on its resolution." *Zappa v. Fahey*, 310 Minn. 555, 556, 245 N.W.2d 258, 259-60 (1976). A reviewing court must view the evidence in a light most favorable to the party against whom summary judgment was granted. *Abdallah, Inc. v. Martin*, 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

> In order to successfully oppose a motion for summary judgment, a party cannot rely upon mere general statements of fact but rather must demonstrate at the time the motion is made that specific facts are in existence which create a genuine issue for trial.

*Hunt v. IBM Mid America Employees Fed. Credit Union*, 384 N.W.2d 853, 855 (Minn. 1986). The question for the judge is whether there is evidence upon which a jury could properly proceed to find a verdict for the

---

2. In note 1 of its brief, Austin stated that Winter did not raise the agent/broker issue in [his] Notice of Appeal, * * * Statement of the Case * * * or in [his] brief. Therefore, [Austin] will not

address the issue which was the basis of the trial court's summary judgment, but will only address issues raised by its Notice of Review * * * as addressed in [Winter's] brief.

914

party producing the evidence, upon whom the onus of proof is imposed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

■ ■ Generally, an agency relationship is based upon consent by one person that another shall act on his behalf and be subject to his control. *See* Restatement, Agency 2d, § 1 (1958); *Norby v. Bankers Life Co.*, 304 Minn. 464, 470, 231 N.W.2d 665, 669 (1975).

The Minnesota Supreme Court has stated that

> [w]hile it is generally the rule that an insurance company is liable for the torts of its agents when they are acting within the scope of their employment, before that rule can be applied it is essential to determine whether the person claimed to be an agent was, in fact, acting in that capacity. A person who procures insurance for others can be an insurance agent, an insurance broker, or both. The essence of the difference is that whereas an insurance agent acts on behalf of a particular insurance company, an insurance broker acts on behalf of the prospective insured. In which capacity a person is acting is a question of fact.

*Eddy v. Republic Nat'l Life Ins.*, 290 N.W.2d 174, 176 (Minn.1980) (citations omitted) (emphasis added). The *Eddy* court explained that the distinction between an agent and a broker is important because a broker *"is independently liable to the insured* in either contract or tort for failing to procure insurance as instructed." *Id.* at 177 (citations omitted) (emphasis added).

■ On appeal, Winter argues that the trial court erred by granting summary judgment because his status as broker or agent was irrelevant if he had the express or apparent authority to offer or obtain policy limits over the $100/300,000 amount listed in his agent's manual. In effect, he argues that questions of whether there was an agency relationship and the scope of the agency are overlapping issues that cannot be separated. We disagree.

As noted earlier, the Minnesota Supreme Court has stated that *before* an insurance company can become liable for the torts of its

agents, "it is essential to determine whether the person claimed to be an agent was, in fact, acting in that capacity." *Eddy*, 290 N.W.2d at 176; *accord Norby*, 304 Minn. at 468, 231 N.W.2d at 668 (dispositive issue to determine insurer liability for agent's act was whether party actually was an agent); *Pesina v. Juarez*, 288 Minn. 379, 384, 181 N.W.2d 109, 112 (1970) (where insurer did not deny agency relationship trial court properly examined scope of agent's apparent authority); *Morrison v. Swenson*, 274 Minn. 127, 135, 142 N.W.2d 640, 645 (1966) ("Once it is established that one who purports to represent an insurance company is its agent, a parol contract will bind the company if [the agent's acts are] within the actual, implied, or apparent authority of the agent").

■ We conclude the trial court applied the appropriate seven factor test of *Morrison*, 274 Minn. at 136, 142 N.W.2d at 646, to determine whether Winter was an insurance agent or broker before examining the scope of any alleged authority. These factors are:

(1) Was the broker at the time of effecting the insurance actually or ostensibly connected with the insurer and employed by it, or was he acting independently of any employment by the company?

(2) From whom did the broker's express or implied authority to do the act in question originally proceed?

(3) Was the act one which the broker was expressly authorized to do, or was it a usual and necessary means to accomplish the execution of the authority conferred?

(4) Was the act done independently of the original employment, and if so, for whom, or at whose instance?

(5) Which party could the broker hold directly responsible for his remuneration at the time the act in question was done?

(6) Was there any limitation on the broker's ostensible authority, of which the person dealing with him was, or ought to have been, cognizant?

(7) Was there any ratification by the ostensible principal of the claimed authorized act?

*Id.* at 136, 142 N.W.2d at 646.

The trial court found that: (1) the Agency Agreement between the parties specifically provided that Winter was not an employee of Austin; (2) the contract limited Winter's express authority to sell liability policies to $100/300,000; and (3) Austin did not ratify Winter's omission or alleged negligence. The court then applied its findings to the seven factors listed above, and properly concluded that Winter acted as a broker, rather than Austin's agent when he advised (or failed to advise) Frank about his coverage needs.

Therefore, we conclude the trial court properly determined that the existence of an agency relationship was dispositive. The court did not err by determining that Winter was a broker and therefore independently liable for his own acts or omissions. Because we agree that there are no genuine issues of material fact and that the trial court correctly applied the law, we conclude that the trial court properly granted summary judgment for Austin.

We note that Winter's argument, in effect, asks this court to find that Austin is his second "errors and omissions" carrier. We decline to make Austin, a property and casualty insurance company, an errors and omissions liability insurer of Winter.

We further note that Winter's reliance on *Usher v. Allstate Ins.*, 300 Minn. 52, 218 N.W.2d 201 (1974) and *Glens Falls Indem. v. D.A. Swanstrom Co.*, 203 Minn. 68, 279 N.W. 845 (1938) to support his agency argument is misplaced. The *Usher* and *Glens Falls* cases are factually distinct from this case. In *Usher*, the court held that an insurance company could be held liable to provide coverage for damages where an application for insurance was completed and the insurance company had a practice of backdating policies to the application date. *Usher*, 300 Minn. at 56–57, 218 N.W.2d at 204–05. In *Glens Falls*, the court also held that an insurance company could be held liable to provide coverage for damage where the insurer customarily back dated policies to the application date. *Glens*

*Falls*, 203 Minn. at 71–72, 279 N.W. at 846–47.

By contrast, here it is undisputed that Frank never requested additional insurance coverage from Winter. Winter never requested additional policy limits from Austin. Further, the record does not indicate that Frank ever thought he had any more coverage than his $100,000 policy limit. Based on the facts of the case, neither *Usher* nor *Glens Falls* supports Winter's argument.

### III.

Austin argues that it is entitled to attorney fees under Minn.Stat. § 549.21 (1992) and Rule 11 both at the trial court level and on appeal. Because the trial court did not address Austin's request for fees below, the issue is not properly reviewable. *See Thayer v. American Fin. Advisers*, 322 N.W.2d 599, 604 (Minn.1982) (reviewing courts generally must consider "only those issues that the record shows were presented and considered by the trial court in deciding the matter before it.") *quoted in Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn.1988). We will, however, consider Austin's request for attorney fees on appeal.

Generally, an award of attorney fees under both Minn.Stat. § 549.21 and Minn.R.Civ. P. 11 must be based on a finding of bad faith. *Uselman v. Uselman*, 464 N.W.2d 130, 140 (Minn.1990); *Faribo Oil v. Tatge Oil*, 501 N.W.2d 699, 702 (Minn.App. 1993), *pet. for rev. denied* (Minn. Aug. 24, 1993). Rule 11 places an affirmative duty on attorneys to investigate the factual and legal basis for their pleadings. *Radloff v. First Am. Nat'l Bank*, 470 N.W.2d 154, 156 (Minn. App.1991), *pet. for rev. denied* (Minn. July 24, 1991).

Although we have concluded that Winter's arguments are unpersuasive, we cannot say his arguments were made in bad faith, were wholly without merit, or were made solely to delay or harass. We therefore decline to award attorney fees on appeal.

### DECISION

The trial court properly concluded that it first must determine whether an agency rela-

tionship exists before examining the scope of authority. The trial court properly granted summary judgment for Austin. The trial court's failure to award attorney fees below is not properly reviewable. We decline to award attorney fees on appeal.

**Affirmed.**